In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against GREIF REALTY CORPORATION, Respondent.

Supreme Court, Special Term, Kings County, March 27, 1947.

*William E. Grady, Jr.,* for petitioner.

*Harry K. Nadell* for respondent.

F. E. JOHNSON, J. The petitioning board instituted a proceeding to compel the defendant owner of an apartment house

to bargain collectively, etc., with the union and reinstate an employee with pay, etc.; the board moves upon "the entire record of the proceedings before the Board, including the pleadings, notice of hearing, testimony and exhibits, intermediate report of the trial examiner, the exceptions thereto and the decision, findings of fact, conclusions of law and order of the Board" and asks for an order "enforcing in whole the aforesaid order of the petitioner" and requiring respondent to comply, etc.

As has apparently been the practice of the board, a written complaint was served, a written answer was interposed and a subordinate was designated to take testimony; he saw the witnesses, heard the testimony and took 579 pages of minutes, together with many exhibits; he then filed a so-called "intermediate report of trial examiner"; it corresponds for all practical purposes to the decision of a Supreme Court justice upon a trial without a jury; in 9 pages it summarizes the evidence, sets forth the details of fact there disclosed, formulates the issues, discusses the witnesses and the merits of the controversy and makes 5 findings of fact, 1 conclusion of law and 2 recommendations. The matter later came before the board, oral argument was waived, and the board chairman and one other member signed a written "decision and order" which professes to *decide* the case; while it seems to *affirm* the subordinate, its order specifically and in detail states what the respondent is required to do; the direction is preceded by its 6 findings of fact and 5 conclusions of law. It might, instead of resembling an affirmance by an appellate court, be compared to the decision of a Supreme Court justice upon the return of a referee's report when the justice, who has held a motion in abeyance pending a referee's report upon certain questions of fact, proceeds to *decide* the motion upon the basis of that report, the minutes, exhibits, etc., before *him*.

Upon all these papers the board moved under section 707 of the Labor Law that this court enforce the order; upon the hearing of this motion respondent attacked the subordinate for alleged bias and partiality as evidenced by the minutes, with the claim that the evidence did not warrant the conclusions of fact.

A careful study of the motion papers, the board's decision and its order, however, disclosed the surprising fact that nowhere was it said therein that *any* member of the board had even looked at the minutes or the exhibits — much less read them;

thereupon the following notice appeared in the Law Journal (N. Y. L. J., March 3, 1947, p. 847, col. 5): "It does not appear from the petition that when the testimony and numerous exhibits were forwarded to the Board by the Trial Examiner as part of his report, the Board members read the minutes or examined the exhibits, before rendering a decision. The absence from that written decision and findings of any such recital, considered in connection with the similar absence from the later petition upon which the proceeding is brought, presents the question whether such statement should be explicitly made. Failure to state that may have been an oversight, and without passing upon the importance of the absence of such a statement the papers have been returned to the Clerk so that within the next ten days the petitioner may, if so advised, submit an affidavit signed by the chairman of the Board and such other members as can so state, to the effect that before the Board's written decision of September 30, 1946, was signed, the affiants read the 579 pages of minutes and inspected the exhibits.

"It is not suggested that reading the minutes and exhibits now would be sufficient, nor is it decided that the papers now before the court are defective. If, however, it is desired to give proof to show that *prior* to September 30 those Board members who adopted the Trial Examiner's report did, in fact, actually read the minutes and the numerous exhibits, it may be submitted within the time specified; such affidavit shall be served at the time of filing, and reply affidavits, if any, on that subject may be filed and served within two days thereafter."

Instead of supplementing the papers the board filed a brief saying that the papers are sufficient, citing alleged authorities. Why the *minutes* and the *exhibits* should be submitted to this court on the question of sustaining a board that does not appear to have to read the minutes or the exhibits, and which refuses to state that they *were* read, is not clear; if the court is to read them there seems to be no reason why the board should not have read them; if the court should not, or need not, read them there is no apparent sense in reciting, as quoted above, that the motion is made upon various papers, *including* those minutes and exhibits.

The Legislature enacted the Labor Relations Act (Labor Law, art. 20; L. 1937, ch. 443) as an exercise of the police power but did not profess to deprive this court of jurisdiction over factual conflicts arising within the new machinery thereby set up; it might be unprofitable to discuss the many decisions that have been rendered since that act, but now, when it may be late to

do so, it can be said that the courts of this State did not take with sufficient seriousness the invasion of the constitutional jurisdiction of the Supreme Court. Article 20 was added to the Labor Law the year before the 1938 Constitutional Convention, and at a time when this court had, by the Constitution, as now (art. VI, § 1), " general jurisdiction in law and equity " subject only to Court of Appeals, appellate jurisdiction; the section has been interpreted as a limitation of that jurisdiction; section 707 (subd. 2) provided merely that " The findings of the board as to the facts, if supported by evidence, shall be conclusive " (i.e., upon this court when a motion to enforce was made). It is in reliance upon certain decisions construing that language that the board, in its brief filed after the Law Journal notice, took the position: " The inferences to be drawn and the credibility of the witnesses are for the Board to determine ", even though it is now evident that the board never read the minutes or exhibits. It cites decisions that " The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and room for choice exists." (*Matter of Stork Restaurant, Inc.*, v. *Boland*, 282 N. Y. 256, 267.)

*Metropolitan Life Ins. Co.* v. *Labor Relations Board* (280 N. Y. 194, 209) held that in view of the conflict of testimony " we are without power to disturb " the finding of the board; in *Matter of Electrolux Corporation* (288 N. Y. 440) the *Stork* rule (*supra*) was reiterated. There are Federal cases holding " The Board, not the Court, determines the credibility of the witnesses ", and " The credibility of the witnesses was for the Board to determine ", and " that we cannot consider the credibility of witnesses *nor weigh the evidence* " (emphasis supplied).

This interpretation of the quotation from the statute puts the Special Term, when the motion to enforce is presented, in the anomalous position of (1) being asked to read the record, and being required to enforce the board's order, even in spite of a hearty disbelief in the soundness of the findings of fact, or (2) not reading the testimony but enforcing the order as a matter of form. Either position makes the Supreme Court merely the rubber stamp of the board, a situation that ought to have been evident from the beginning when the apparently prevailing interpretation of the meaning of that quotation was first made.

Any business controversy between an employer and an employee was within the jurisdiction of the Supreme Court **before** article 20 was added, yet when this court was first con-

fronted with an attempt to appropriate its jurisdiction over controversies that clearly were within the constitutional language (art. VI, § 1) it apparently made little effort to retain the jurisdiction so given to it and seemed to acquiesce in this legislative invasion of the jurisdiction of a coequal branch of the Government. The results soon shocked those who may have fondly believed that these boards (allegedly *quasi-judicial*) would turn out to be such in fact; we can take judicial notice that the controversy was aired at great length in the 1938 Constitutional Convention, both before the Judiciary Committee and in the convention itself.

Encouraged, perhaps, by this judicial attitude the board has finally come to the position where it will not only not even read the minutes or the exhibits but denies that it is obliged to do so; it claims power to affirm a subordinate's result allegedly based upon testimony and proof that the board does not profess to examine the extent of, though it involves the vital question of the veracity of the witnesses it never saw; the *weighing* of testimony the board refuses to attempt.

In pursuance of this line of thought the board has here made a *pro forma affirmance* of the findings of fact of the subordinate based upon disputed testimony, findings so involved in the question of veracity that simple justice would seem to require that the minutes be read by it before acting.

After refusing to read the minutes, denying that it is obliged to do so, the board asks that its so-called " decision " be accepted and enforced; the fact that the section says that the board " shall have the power to *petition* the Supreme Court " for the enforcement of its order, " and shall certify and file in the court a transcript of the *entire record* in the proceeding, including the pleadings and the *testimony upon which such order was made* and the findings and order of the Board " (emphasis supplied), indicates beyond question that the board is not allowed to thrust its decision before this court and demand that it be approved, regardless of what the court thinks of it.

Upon filing the petition that statute says this court, when the parties are brought before it, " shall have jurisdiction of the proceeding and the *question determined* therein, and shall have power to grant such temporary relief or restraining order *as it deems just and proper * * *.*" (Italics supplied.) If this court is powerless to disagree with the board, no matter how apparent the unsoundness of the decision may be, and cannot do more than meekly say " yes " to its decision no matter what

opinion a reasonable man would form upon reading the testimony, how is it possible for the court to make a decision which " it deems just and proper "?

In the *Matter of Elite Dairy Products* v. *Ten Eyck* case (271 N. Y. 488) the Commissioner, not at the trial, " took the recommendation " of the trial director, and did not make his *own* decision; he did not " personally pass upon the " matter (p. 496); it is evident that he did not so read the testimony; the court said he could not so act; he must " weigh the evidence " (p. 495) that it was only where he had made *his own* findings that this court could " decide whether the findings are sustained by the evidence " (p. 498), which clearly implies that he must read the evidence, even though he may be guided to his decision by a subordinate's recommendation (emphasis supplied). (See, also, *National Labor Relations Board* v. *Biles Coleman L. Co.*, 98 F. 2d 16; *National Labor Relations Board* v. *Baldwin L. Works*, 128 F. 2d 39; *Matter of N. Y. State Labor Relations Board* v. *Timen*, 264 App. Div. 120, 122.) To the same effect is *Smith* v. *State of New York* (214 N. Y. 140, 143-144) where CARDOZO, J., said: " That the practice in the Supreme Court gives a litigant the right to have his case determined by the same judge who heard the testimony, is certain. (*Williamson* v. *Randolph*, 111 App. Div. 539; 185 N. Y. 603.) Indeed, the right is so fundamental that it is secured, at least in cases in the Supreme Court, by the constitution of the state. (*Williamson* v. *Randolph, supra.*) Article 6, section 3, of the constitution provides that ' the testimony in equity cases shall be taken in like manner as in cases at law.' The same principle of procedure is fortified by statute. By section 22 of the Judiciary Law, Cons. Laws, ch. 30, (formerly section 46 of the Code of Civil Procedure) it is provided that ' a judge, other than a judge of the Court of Appeals, or of the Appellate Division of the Supreme Court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present or sitting therein as a judge.' (See also: Code Civ. Pro., section 3343, subd. 3.) Whether the Board of Claims has the power to provide by its rules that a commissioner who has taken no part in the hearing may join in the decision, is a question not now before us. The board is not in the strict sense a court (*People ex rel. Swift* v. *Luce*, 204 N. Y. 478), but its functions are judicial; and the requirement that witnesses shall be seen and heard by the judicial officer who *is to weigh their testimony* has been proved by experience to be a means so

important for the ascertainment of truth as to entitle us to assume that it will not be lightly abandoned." (Emphasis supplied.)

The statute from which the board derives its powers likewise would seem to require a reading or appraisal by it of the testimony taken in arriving at its own decisions. Subdivision 3 of section 706 of the Labor Law prescribes: " *If upon all the testimony taken the board shall determine* that the respondent has * * * the board shall state its findings of facts * * *." (Emphasis supplied.)

The decisions are replete with language supporting the view that the findings of an administrative body must have support in the *evidence*; yet, if the board itself, in making such findings, failed to *read* the evidence it must follow that the conclusion arrived at was *arbitrary*, or that it was the decision *not of the board,* but of some subordinate to whom the board legally could not delegate such power, and whose decision it could not merely accept.

" Findings of fact in support of decisions by courts and administrative boards alike serve to give assurance to parties concerned that the decisions are based *upon evidence* of record and were not reached arbitrarily or influenced by extra-legal considerations." (*N. Y. Water Service Corp.* v. *Water P. & C. Comm.,* 283 N. Y. 23, 30.) (See, also, *Matter of Perpente* v. *Moss,* 293 N. Y. 325, 329; *Matter of N. Y. State Guernsey Breeders Co-Op.* v. *Noyes,* 260 App. Div. 240, 246; *Matter of Kraft Cheese Co., Inc.,* v. *Noyes,* 263 App. Div. 761, 762; *Matter of Toyos* v. *Bruckman,* 266 App. Div. 28, 31; *Matter of Wood* v. *Board of Educ. of City of N. Y.,* 267 App. Div. 959.) Analogously under subdivision 6 of section 1296 of the Civil Practice Act (court review of a body or officer) the *court must ascertain* " Whether there was any competent *proof of all the facts* necessary to be proved in order to authorize the *making* of the determination " appealed from. (Italics supplied.)

This situation seems to be a sad result of a complacent attitude towards a legislative invasion of constitutional jurisdiction; yet a ray of light on the subject seems to be the January, 1947, division of opinion in the Court of Appeals (*Matter of Rumsey Manufacturing Corp.* [*Corsi*], 296 N. Y. 113). There another *quasi-judicial* board made a finding of fact which was reversed by the Appellate Division (270 App. Div. 973) ; four of the Judges in the Court of Appeals, reversing, held that the statute's alleged denial of the court's power to reverse the

board's action when based on questions of fact was constitutional. The hopeful aspect of the case is in the opinion representing the views of Judges THACHER, CONWAY and FULD; they may not have said with special definiteness what they thought of past decisions of that court in acceptance of the attempted legislative invasion of the century-old jurisdiction of the Supreme Court, or the wisdom of the courts in having gone as far as they have in strengthening these boards, but their opinion seems to be a substantial challenge to the *premise* upon which decisions of boards have been accepted as almost unquestionable.

The court divided four to three on the meaning of the testimony; the majority expressly accepted (p. 118) the law rules formulated by THACHER, J. (CONWAY and FULD, JJ., concurring). The Appellate Division was stated to have " recited the facts, established " (p. 121); the " hearing before the board was predicated solely upon the *evidence* taken before the referee " (p. 121). The three Judges said (p. 122): " Upon this state of the record it seems to be entirely clear that the determination of the board was not supported by *substantial* evidence " so they, too, must have read the testimony.

This language of the Minnesota Supreme Court was quoted by THACHER, J. (pp. 123–124): " The order may be vacated as unreasonable if * * * having regard to the interest of both the public and the [respondent], it is so *arbitrary* as to be beyond the exercise of reasonable discretion." (Emphasis supplied.) He also quoted (p. 124) from the United States Supreme Court that the court is to " enter upon such an examination of the record as may be necessary to determine " if there was " such arbitrary or capricious action on the part of the " board as is forbidden. Also the United States Supreme Court language in *St. Joseph Stock Yards Co.* v. *United States* (298 U. S. 38, 52): " Under our system there is no warrant for the view that the judicial power of a competent court can be circumscribed by any legislative arrangement designed to give effect to administrative action going beyond the limits of *constitutional* authority." (Emphasis supplied.)

Is this, at last, the challenge to the soundness of all those acquiescent decisions that have accepted this attempted amendment of the Constitution as effective to deprive this court of the power to examine the decision in the light of the *evidence?*

Surely no sound view of section 707 gave the board the right to make the decision and findings herein without even looking at the testimony and exhibits; this court should not be expected

to enforce an alleged " decision ", which in reality is a *pro forma* affirmance of a subordinate; it is not too late to insist that this court is not a " rubber-stamp " for any pretended " decision " by a quasi-judicial board of laymen.

Motion denied.