THE PENNSYLVANIA RAILROAD COMPANY, PROSECU-
TOR-APPELLANT, v. NEW JERSEY STATE AVIATION
COMMISSION, ET AL., DEFENDANTS-RESPONDENTS.

Argued January 31, 1949—Decided March 28, 1949.

66

*Mr. Charles S. Barrett, Jr.,* argued the cause for the appellant. *Mr. John A. Hartpence* and *Mr. Carl Helmetag,* the latter of the Pennsylvania Bar, on the brief.

*Mr. Morgan R. Seiffert* argued the cause for the respondent Aeromotive Corporation of New Jersey, Inc.

*Mr. Walter D. Van Riper,* Attorney General, and *Mr. John W. Griggs,* Deputy Attorney General, presented a brief on behalf of respondents New Jersey State Aviation Commission and Robert L. Copsey, Director of the Commission.

The opinion of the court was delivered by

HEHER, J.   *Certiorari* was issued by the former Supreme Court to review the grant by the State Aviation Commission to its co-respondent, Aeromotive Corporation of New Jersey, Inc., on May 15, 1946, of a license to operate an airport on lands situate at Jersey Avenue and How's Lane, in North Brunswick Township, Middlesex County, subject to the restriction that "no take-off will be permitted to the east from the East-West Runway." The writ was dismissed by judgment entered on May 13, 1948; and the case is here on appeal pursuant to *article XI, section IV, paragraph 8 of the Constitution of 1947* and *ch. 367 of the Pamphlet Laws of 1948.*

Objections to the grant of the license were interposed by the appellant Railroad Company; and the issuance of the license followed a hearing of the application and the protest in which appellant participated. The Commission's conclusions were embodied in a letter dispatched to appellant's attorney by its acting director on February 20, 1946, stating that "after careful consideration of objections presented and evidence admitted before it" at hearings held on December 6, 1945, and January 7, 1946, the Commission "voted unanimously to dismiss said objections on the grounds that they were without merit consistent with Federal Civil Aeronautics Administration standards for safe operation of aircraft." The finding of the old Supreme Court was that it could not be said that "there was not reasonable support in the evidence for the result reached by the commission."

The points made by appellant, in brief, are that the function of the Commission under the statute (*R. S.* 6:1–20 *et seq.*) is *quasi* judicial in nature; that the procedure here did not meet the requirements of due process of law; and that the action taken "is arbitrary, unreasonable and unsupported by adequate testimony," and as well purports to authorize "repeated flights at altitudes beneath the minimum flight levels prescribed by the Federal government," and thus constitutes a taking of the property of appellant "and others" without compensation in "direct violation" of the Federal and State constitutions.

██ Unlike the regulatory authority conferred by the original Milk Control Act considered in the case of *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504 (*E. & A.* 1935), the power to license airports conferred by the act under review is *quasi* judicial, for its exercise is expressly conditioned upon the ascertainment of the operative facts from evidence adduced at a public hearing. The exercise of power reviewed in the cited case was purely administrative. There, quite apart from the differences in subject matter, the administrative agency was authorized, "in its discretion," to hold "a public hearing  *  *  *  and invite producers, consumers, local dealers and public health officials  *  *  *  to submit such proofs as they may desire to aid" in the performance of its function to regulate the price of milk. *Pamph. L.* 1933, *p.* 353, *art. XII.* Here, the administrative body is directed to "provide for the licensing of airports" and other avigation facilities "by rules, regulations and orders adequate to protect the public health and safety and the safety of those participating in aeronautical activities." *R. S.* 6:1–44. The commission is charged with the "duty" of holding "public hearings on matters affecting aeronautics," and empowered "to conduct investigations, inquiries and hearings concerning matters covered by the provisions" of the act. *R. S.* 6:1–31; 6:1–51. It is authorized to take "the deposition of witnesses residing within or without the State in the manner prescribed by law for like depositions in civil actions in the courts of record in this State." And there is a direction that

a "full and complete record shall be kept of all proceedings had before the commission, or any hearings had," and that "all testimony shall be taken" stenographically; also, that "Every order of the commission shall contain findings in sufficient detail to enable a court to determine the controverted questions presented by the proceeding, and whether proper weight was given to the evidence." *R. S.* 6:1-52. The chairman and vice-chairman of the commission are endowed with authority to administer oaths and affirmations, issue subpœnas, and compel the attendance and testimony of witnesses and the production of papers, books, and documents; and failure of compliance is made punishable as for a contempt of the court of common pleas. *R. S.* 6:1-51.

A review by *certiorari* is provided; and the reviewing court empowered to set aside "any order" of the commission, in whole or in part, when it "clearly appears that there was no evidence before the commission to support the same reasonably, or that the same was without jurisdiction of the commission." *R. S.* 6:1-53; 6:1-56. Both the old Court of Errors and Appeals and the old Supreme Court were also clothed with authority to direct "a rehearing" of the order under review "before the commission upon such terms and conditions as are reasonable," if that course be "equitable and just;" and in that event the Commission is enjoined to "proceed to a rehearing of the evidence upon which the order under review was based, and upon such additional evidence, if any, as may be produced," and authorized to "readopt the order or alter, amend, modify or extend it." *R. S.* 6:1-57.

We find nothing in the legislative expression to suggest that the exercise of the all-important power of licensing airports is excluded from the operation of these provisions. Quite the contrary; for this is a function vitally related to the public health and safety. The direction of section 6:1-44 that the reasons for the rejection of an application for a license be stated in writing is plainly not exclusive. It is primarily in the interest of the applicant, and has no relation to affirmative action which concerns the public safety.

Thus, the statutory function here exercised has a judicial quality, for while the exertion of the regulatory licensing authority is essentially administrative, the ascertainment of the facts from the evidence adduced at a public hearing and the application of the prescribed standard partake of the attributes of a judicial inquiry, and so the proceeding is deemed *quasi* judicial and subject to the requirements of due process. *National Dairy Products Co. v. Milk Control Board,* 133 *N. J. L.* 491 (*Sup. Ct.* 1945). The term *"quasi* judicial" used in contradistinction to "ministerial," the determinative is the quality of the act rather than the character of the agency exercising the authority. Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thus requiring the exercise of a discretion or judgment judicial in nature on evidentiary facts, the function is *quasi* judicial and not merely ministerial. *McFeeley v. Board of Pension Commissioners of Hoboken,* 1 *N. J.* 212. The proceeding "is not one of ordinary administration, conformable to the standards governing duties of a purely executive character," but a legislative proceeding having "special attributes" under the statute which "carries with it fundamental procedural requirements." *Morgan v. United States,* 298 *U. S.* 468, 56 *Sup. Ct.* 906, 80 *L. Ed.* 1288 (1936). The requirement of a "hearing" has reference " 'to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts.' The 'hearing' is 'the hearing of evidence and argument.' * * * And the manifest purpose in requiring a hearing is to comply with the requirements of due process upon which the parties affected by the determination of an administrative body are entitled to insist." *Shields v. Utah Idaho Central R. Co.,* 305 *U. S.* 177, 59 *Sup. Ct.* 160, 83 *L. Ed.* 111 (1938). Such a "hearing" is designed "to afford the safeguard that the one who decides shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. The 'hearing' is the hearing of evidence and argument." *Morgan v. United*

*States, supra.* The right to a hearing may arise by implication from the legislative expression. *Thayer Amusement Corp. v. Moulton,* 63 *R. I.* 182, 7 *A.* 2d 682, 124 *A. L. R.* 236 (1939).

██ ██ Where the Commission is governed in its action by the statutory standard, its judgment is not subject to judicial correction unless it "clearly appears" that there was "no evidence" before it "to support the same reasonably, or that the same was without jurisdiction of the commission." *R. S.* 6 :1–56. But we are unable to determine whether the statutory considerations controlled the action under review. The hearing was quite informal. The witnesses were not sworn. And, as stated, the only finding revealed by the record is that the Commission voted to dismiss appellant's "objections" on the ground that "they were without merit consistent with Federal Civil Aeronautics Administration standards for safe operation of aircraft." The primary standard is "the public health and safety" and the "safety" of. participants in aeronautical activities; and we have no way of knowing whether the evidence was appraised in the light of this norm. The site of the airport is 638 feet from appellant's main line of transportation between New York and Philadelphia, one of the heaviest travelled railroads in the world. . The contention of the Railroad Company is that the use of the airport in such close proximity to the railroad would menace the safety of the travelling and shipping public, and that the hazard is established by the proofs. The line is electrically operated by energy conveyed through a catenary system consisting of poles parallelling the tracks varying in height from 70 to 80 feet and wires strung therefrom carrying voltages up to 132,000. The wires are under great tension and therefore easily broken. 343 trains pass the airport site daily, of which 248 are passenger trains carrying more than 150,000 passengers daily, or approximately 56,000,000 annually. As we have seen, the statute directs that every order of the Commission shall contain findings "in sufficient detail" to enable the reviewing judicial authority "to determine the controverted questions" and "whether proper weight was given to

the evidence." *R. S.* 6 :1–52. The finding made here does not constitute a compliance with this direction. The provision is obviously designed to insure the effectuation of the statutory policy and to prevent arbitrary action.

This constitutes an error of substance which requires a rehearing of the application and a determination pursuant to the requirements of the statute.

Moreover, evidence revealed by an inspection of the site and the surroundings, made by a member of the Commission's inspection staff, was not spread upon the record, and so made available to the parties. The action taken cannot be made to rest upon undisclosed evidence or information *dehors* the record which the parties in interest have had no opportunity to test for trustworthiness and explain or rebut. Compare *National Dairy Products Co. v. Milk Control Board, supra; Scaduto v. Bloomfield,* 127 *N. J. L.* 1 (*Sup. Ct.* 1941). And, there being no permissible statutory course otherwise, a commissioner who has not heard the evidence adduced in the proceeding is not eligible to participate in the determination of the issue. *McAlpine v. Garfield Water Commission,* 135 *N. J. L.* 497 (*E. & A.* 1947).

The judgment of the former Supreme Court is reversed; and the cause is remanded with direction to the respondent Commission to rehear the application and determine the issue in conformity with the law.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance*—None.