## FLORIDA REAL ESTATE COMM., et al v. YURAN, et al.

### No. 1894.

Circuit Court, Dade County, Civil Appeal.

April 13, 1959.

Anderson & Nadeau, Miami, for petitioners.

Frank A. Wilkinson, Orlando, for Florida Real Estate Commission.

MARSHALL C. WISEHEART, Circuit Judge.

Ardee Yuran and Saul B. Yuran, registered real estate brokers, petitioned this court for a writ of certiorari to review and quash a final order of the Florida Real Estate Commission (hereinafter referred to as "the commission"), entered on May 27, 1958 ordering the revocation of their registrations as registered real estate brokers.

The information was filed on October 7, 1957 by Edward A. Curry, an employee of the commission, jointly against the petitioners. The information is in five counts. The first count charged the defendants with having represented to John and Ella Wilburn that a provision in a deposit receipt reciting that the commission to be paid to the employer of the petitioners, John C. Frazure, was to be paid to be 10%, was meaningless, and that the sellers would receive net the sum of $50,000 for the property, regardless of the 10% provision in the contract, and that in reliance on these misrepresentations, the sellers executed the contract. The selling price was $54,000, and that when the time came for closing the petitioners denied any agreement to accept less than 10%, with the result that on advice of counsel the sellers paid a full 10% commission.

Count two charges that petitioners, while in the employ of John C. Frazure, purchased property from one David Konhauser, without the knowledge and consent of their employer, and without paying a commission to John C. Frazure.

Count three alleged that without the knowledge and consent of John C. Frazure they purchased property through a corporation in which they had an interest, and thereafter resold the property to Sinclair Oil Corporation without the knowledge and consent of John C. Frazure, and that John C. Frazure received a commission of only $2,050.

The foregoing three counts each charge that Saul B. Yuran and Ardee Yuran are guilty of fraud, concealment, misrepresentation, breach of trust, trick, scheme or device, all in violation of chapter 475, Florida Statutes.

Count four charged that while in the employ of John C. Frazure the defendant, Ardee Yuran, organized the Florida State Realty Corporation, and obtained a brokerage license in the name of the corporation, without advising John C. Frazure of the termination of her employment. This count charges that by reason of the foregoing petitioners were guilty of concealment and breach of trust, in violation of chapter 475, Florida Statutes.

Count five realleges by reference the matters set forth in the first four counts, and charges that by reason thereof the petitioners were guilty of a course of conduct or practices showing that they were so incompetent, negligent and dishonest or untruthful that the money, property transactions and rights of investors, or those with whom they sustained a confidential relation, could not be safely entrusted to them, all in violation of chapter 475, Florida Statutes.

Section 475.25 (1) permits only a *suspension* for a first offense. Section 475.25 (3) permits *revocation* upon proof of a "course of conduct" violative of the statute. There is no evidence of any previous charges having been filed against the petitioners.

The petitioners, following denial of their motion to dismiss, filed answers in which they denied all of the material allegations of the information.

The respondent then, pursuant to the statute, appointed Edwin W. Priestly, a court reporter, to act as examiner. The examiner, upon the date scheduled for the hearing, simply heard and transcribed the testimony of the witnesses, and accepted, over repeated objections as part of the record, oral testimony and documentary evidence, regardless of its competency or admissibility under accepted rules of evidence.

Following the completion of the trial proceedings the examiner transcribed his notes and forwarded the transcribed testimony, together with the exhibits, to the commission, without any findings or recommendations. Upon that record the order of revocation was entered at a subsequent meeting of the commission.

Petitioners make a number of legal contentions which raise constitutional questions. One of such is that the provisions of sections 475.27 and 475.32 violate section 27 of article III of the Florida constitution. Cited as authority for that position is Florida Dry Cleaning & Laundry Board v. Economy Cash & Carry Cleaners (Fla.), 197 So. 550.

Petitioners further contend that with respect to the proceedings had they were denied due process because none of the members of the commission who participated in the decision participated in the proceedings or heard any of the witnesses, nor did the examiner file any report or recommendations. Morgan v. United States, 298 U.S. 468; New York State Labor Relations Board v. Greif Realty Corp., 70 N.Y.S. 2d, 288; Colorado State Board of Nurse Examiners, et al. v. Hohu (Colo.), 268 P. 2d 401.

The mere fact that the commission, or its agents, acts in a tri-party capacity in such revocation or suspension proceedings does not in and of itself render the proceedings violative of the due process clause of the federal constitution. The proceedings, however, were quasi judicial in character, and a fair and impartial trial necessarily requires some evaluation of the testimony. The function of an examiner is akin to that of special master or a judge. The demeanor of the witnesses, the manner in which their testimony is given, are factors which must be weighed in determining the weight and sufficiency of the evidence, and in situations where the witnesses are equally balanced both as to number or approximate interest, the weight to be given their testimony is very often a determining factor.

This is particularly true where, as here, the commission, or its agent, lodges the charges, prosecutes the case and makes the decision. Great care should be taken to preserve the rights of licensees against arbitrariness where the revoking authority acts in such a tri-party capacity.

While the constitutional questions above raised are not without merit, a decision upon them is not necessary to a decision of the case, and the court does not herein adjudicate such questions.

Petitioners further contend that the revocation order is deficient as a matter of law in that it fails to make sufficient findings or recite upon what testimony or evidence it is predicated. The order of the commission is deficient as a matter of law in this respect. Nowhere in said order is any reference made to any of the witnesses' testimony or to any of the exhibits. It is impossible, from the commission's order, to tell upon what evidence it is predicated. The order simply recites findings in the most general terms that both petitioners were guilty of all the charges preferred. The nature of the order is evidence of arbitrary action by the commission because four of the five counts are predicated upon a want of knowledge by a person who was deceased when the charges were filed.

In an administrative proceeding affecting the license to pursue his profession or calling, the licensee is entitled to know the basis of the decision and upon what evidence it is predicated. This is not only an aid to the licensee or his attorneys in seeking judicial review of such orders, but it is necessary that the courts sitting in review upon such orders know what furnished, or purported to furnish the basis for the order on appeal. Pennsylvania R. Co. v. New Jersey State Aviation Commission (N.J.), 65 A. 2d 61; New Jersey Board of Optometrists v. Nemitz, 90 A. 2d 740; Wabash Valley Coach Co.

v. Arrow Coach Lines (Ind.), 94 N.E. 2d 753; Securities Commission of Indiana v. Holovachka (Ind.), 124 N.E. 2d 380; Illinois Central R. Co. v. Illinois Commerce Commission (Ill.), 104 N.E. 2d 796; Mutual Benefit Life Insurance Co. v. City of Newark, 113 A. 2d 185. This is particularly true in a close case, or where, as here, most of the evidence adduced before the examiner was irrelevant or incompetent under accepted rules of evidence.

A great percentage of the evidence offered by the commission and accepted by the examiner was irrelevant and otherwise inadmissible testimony. It consisted in the main of conversations between the deceased employer, John C. Frazure, and third parties, reiterated by the third parties, occurring outside the presence of the petitioners, or in correspondence, or copies of correspondence, between Frazure and third parties. The admissible evidence, such as the deposit receipts and checks, and receipts evidencing payment of commissions, supports the position of the petitioners. Further, the commission, in making its order, fails to differentiate as to what evidence, if any, was applicable to one defendant and what to the other.

The court has carefully reviewed the record, and finds that there is no competent evidence to sustain the order of revocation as to either Ardee Yuran or Saul B. Yuran, or to adjudge either of them guilty of any of the charges preferred by the commission.

The proceedings were instigated by the commission upon the complaint not of any persons who claimed to have been injured or defrauded by the petitioners, but by the widow of John C. Frazure, their former employer.

The gravamen of counts two, three and four, as well as count five, insofar as it realleges by reference counts two, three and four, charges the petitioners with having committed acts therein charged without the knowledge of Frazure. Frazure died in September of 1956. The acts complained of allegedly occurred in 1955 and 1956, prior to his death. The testimony of the petitioners, which is uncontradicted in this record, was that they fully informed Frazure of each of the transactions prior to the happening of the event and he had approved the course of action and what was done. Their uncontradicted testimony finds further support in the deposit receipts, checks, closing statements and the testimony of other witnesses.

In addition to the issue of want of knowledge on the part of Frazure, which the commission wholly failed to prove, the property owner, Konhauser (count two) testified that he had never listed

the property with Frazure's office. The commission paid in count three was $2,050, 2½% commission on the first transaction, and a second payment of a 2½% commission upon a resale to Sinclair Oil Corporation. This the petitioners testified Frazure agreed to accept because of their assurances as to a quick resale, which in fact did materialize, resulting in the payment of the second 2½% commission.

With respect to count one, there is no competent evidence whatever to show that Ardee Yuran made any misrepresentation or that she was guilty of the offense charged.

As to Saul B. Yuran, the great weight of the evidence is against the finding of the commission, and in favor of Saul B. Yuran. The contract plainly spelled out the payment of a 10% commission and the sellers took the contract to their attorney for approval very shortly after its execution. The provision for the 10% commission was then discussed with their attorney. No protest as to the written provision for the payment of a 10% commission was raised until the time of closing. The record also reveals that it was Frazure who insisted upon the full payment of the 10% commission, and he overruled the suggestion of Saul B. Yuran when the controversy over the commission arose for the first time at the closing, that they attempt to effectuate an amicable compromise. Frazure there accused one of the sellers as being a "liar", when the position was taken by the sellers that the commission was to be other than 10%. In order to permit the closing, the full commission was escrowed. Frazure then employed an attorney to prosecute his claim for the full commission recited in the deposit receipt. The matter was ultimately resolved by the payment of the full commission to Frazure upon the recommendation of the attorney for the sellers.

The testimony of John J. Sewell, a commission witness, was of no great moment and of less weight. He was not present at the time the contract was signed. He later wrote a letter to one of the purchasers, J. Bernard Spector (def.'s exhibit 6, R 258), in which he took the position that the commission to be paid on the Wilburn transaction was to be the full 10% called for by the contract, or $5,400. This was in contradiction of his testimony as to how much commission was to be paid. When confronted with the letter he took the position that the statements he made in it were not true and that it was written at the insistence of Frazure.

The law requires that in such revocation proceedings the order of the revoking authority be based upon competent evidence which is of sufficient weight to support the charges made. 53 C.J.S. (Licenses) 655, section 44. Such is not the record or the case here.

For the reasons above stated the petition for writ of certiorari is granted, and the revocation order of May 27, 1958, as to both Saul B. Yuran and Ardee Yuran, is quashed, vacated and set aside, with directions to the respondent and the commission to dismiss all of the charges as to both Ardee Yuran and Saul B. Yuran.