W. Sale LEWIS, Savings and Loan Commissioner of Texas, et al., Appellants,

v.

GUARANTY FEDERAL SAVINGS AND LOAN ASSOCIATION et al., Appellees.

No. 11951.

Court of Civil Appeals of Texas, Austin.

Aug. 9, 1972.

Rehearing Denied Aug. 30, 1972.

Crawford C. Martin, Atty. Gen., Ralph R. Rash, Bill Flanary, Asst. Attys. Gen., Austin, Jacobsen & Long, Joe R. Long, Gary Evatt, Austin, for appellants.

DeLange, Hudspeth, Pitman & Katz, Houston, Heath, Davis & McCalla, Dudley D. McCalla, Austin, Raymond M. Hill & Associates, Houston, Austin, Dabney, Northrop & Garwood, St. John Garwood, Jr., Houston, for appellees.

O'QUINN, Justice.

The Savings and Loan Commissioner of Texas, W. Sale Lewis, and the directors and organizers of a proposed association, Lone Star Savings Association of Texas City, are appellants from judgment by which the district court of Travis County set aside an order of the Commissioner granting application of the proposed association for a charter and remanded the matter to the Commissioner with instructions to deny the application.

The appellees are Guaranty Federal Savings and Loan Association of Galveston and Mainland Savings Association of Texas City who opposed the application for charter before the Commissioner and were appellant and intervenor in district court.

Trial of the cause was concluded April 20, 1971, and the issues were argued before the court by agreement of counsel on October 28, 1971, after submission of written briefs. The trial court entered judgment on February 18, 1972, and found the order of the Commissioner "invalid, void, and of no force and effect" and set aside the order in its entirety.

It is evident from the record that the trial court's action was based on proof of extraordinary conduct of the Commissioner and his Deputy in making an *ex parte* investigation in Texas City, nearly four months after the charter hearing had closed, in the company of a leading organizer of the proposed association, but out of the presence of and without notice to the opposing parties, followed three days later by the Commissioner's order granting the charter, without including the fact of the investigation or the findings developed thereby in the record of the charter hearing. The parties opposing the charter application did not learn of the separate investigation until nearly eight months after it was made and then came into possession of the salient facts and circumstances surrounding the indagation only after a prolonged discovery course, aided by orders of the district court.

The Commissioner and the other appellants bring twenty-three points of error briefed in six groups. The first fifteen points deal with substantial evidence, evidentiary issues, and the issue of use by the Commissioner of different hearing officers. Under points sixteen through twenty-one appellants defend the Commissioner's isolated inquiry in Texas City. The final points complain of the trial court's action in setting the Commissioner's order aside and remanding the proceeding to the Commissioner with instructions to deny the application for charter.

We will overrule such points as we reach, and will affirm the judgment of the trial court.

Hearing before the Commissioner began on February 17, 1970, and after four days was recessed and then resumed February 25. The hearing closed on February 26, 1970.

Rule 1.9, Rules of Texas Finance Commission, requires that "The Commissioner shall render his decision within thirty calendar days after the date the hearing is closed . . ." Rule 1.8 of the Commission authorizes the Commissioner, in his discretion, ". . . to make an independent investigation of matters raised in the hearing," and if the Commissioner bases his decision on evidence disclosed in the post-hearing investigation, he is required to make the results of that investigation a part of the official record of the hearing and permit all parties opportunity to be heard, even by reopening the hearing if necessary. The rule provides: "This shall be done within thirty (30) days after the date of the original hearing."

The Commissioner did not render his decision within thirty days after the hearing, as required by Rule 1.9, nor did he institute an independent investigation within thirty days after the hearing as permitted by Rule 1.8.

Almost four months following the close of the hearing the Commissioner and his Deputy, on June 19, 1970, traveled by chartered plane from Austin to Texas City where they made a post-hearing investigation in the company of Donald W. Tarpey, one of the organizers of Lone Star Savings and a subscriber to the largest block of permanent reserve fund stock in the association. Tarpey was also one of two trustees subscribing to nearly 60,000 shares for undisclosed beneficiaries, out of a total proposed issue of 80,000 shares.

Both the Commissioner and the Deputy admitted under oath later that the "prime reason" for and the "basis of" making the trip to Texas City was "to confirm or deny what's in the record." No written memorandum of the trip and no findings developed by the investigation were placed by the Commissioner in the official record of the hearing.

On the third day after returning to Austin from Texas City, the Commissioner on June 22, 1970, issued his order granting a charter to the proposed association. The parties opposing the application, appellees on appeal, were not given notice in advance that the investigation would be made in Texas City, nor were they advised afterwards of the results of the investigation so as to afford them opportunity to be heard.

Following the Commissioner's order of June 22, Guaranty Federal Savings filed its petition in district court on July 22, 1970, seeking judgment reversing the order. Mainland Savings Association filed its petition in intervention in August of 1970.

On February 17, 1971, nearly a year after the hearing and some eight months after the Commissioner's post-hearing investigation, Appellees Guaranty Federal and Mainland Savings learned, in the course of taking a deposition preparatory to trial, that the *ex parte* investigation had been made but had not been incorporated in the hearing record. While taking the deposition of Deputy Commissioner Rolan Tucker, counsel for the appellees drew from the witness that the "prime reason" for the trip to Texas City was to "confirm or deny" what the Commissioner saw in the record. Tucker could not remember the name of the person he and the Commissioner talked to, although "He was the man who drove us around . . ." in Texas City, but did know that "He was a party interested in the application," and recalled that "He agreed to drive us around where we wanted to go." Tucker testified that as they drove around he and the Commissioner casually discussed the charter application as pending business.

Apparently in their effort to obtain evidence that examiners acting for the Commissioner had not been required to file reports or findings of fact for the Commissioner to review in reading the record of hearing and in reaching his decision on the application, the appellees sought to take the depositions of Commissioner Lewis, Deputy Commissioner Tucker, and Examiners Miles Chumbley and Arthur Leiser. The Commissioner and Lone Star Savings attempted to prevent the taking of depositions in a motion to quash filed February 9, 1971.

Thereafter the deposition of Tucker and the Commissioner were taken on the same day, February 17. Although Tucker was able to recall such facts concerning the trip to Texas City as have been stated, the Commissioner testified that he was unable to recall when he went to Texas City, whether anyone went with him, whether he talked to anyone in Texas City about the application, or whether he notified opponents of the application that the trip was being made and advised them later of the facts obtained from the investigation.

Interrogatories were served later on the Commissioner, which he answered March 31, 1971, but the Commissioner could not recall the name of the person who met the plane in Texas City and drove the Commissioner and Deputy Tucker where they asked to go, and although he recalled being driven to a restaurant, apparently in Galveston, he was unable to remember who went along to lunch besides Tucker. Nine days later, after motion in district court to compel more specific answers, the Commissioner filed supplemental answers in which he stated that upon his inquiry of counsel for Lone Star Savings he was told "that the name of the person who met him at the airport on June 19, 1970, was Donald W. Tarpey . . ."

The Commissioner testified by deposition that the basis for making trips such as he made to Texas City "is to confirm or deny what's in the record." The Commissioner compared his investigation to that of a person "sitting on a Loan Committee . . . [of a loan association]" going "out and look at a house that you are making a loan on."

The record does not disclose whether the "chartered plane" used by the Commissioner in flying to and from Texas City was furnished by the State of Texas or by interested parties, and the Commissioner was unable to recall the name of the pilot. It does not appear merely coincidental that Tarpey met the Commissioner when he arrived at the airport, furnished the vehicle and was the driver for the Commissioner and the Deputy taking them to whatever points they wished to visit, and afterwards returned the two officials to the airport for their return to Austin. The Commissioner testified that his official records did not disclose names of persons and such other information as would have revealed a more complete account of the trip and how it came to be made in the manner it was made.

The Commissioner testified that he had received a letter dated June 19, 1970, the date of the trip to Texas City, signed by Tarpey and eight other persons constituting the "proposed Board of Directors of the Lone Star Savings and Loan Association" in which they agreed that (1) they would promptly apply for insurance of accounts and would not open for business without insurance or "prior approval of your office" and that (2) until such time as the directors had notice that application for insurance had been approved, they would not permit the permanent reserve fund stock of the association to be transferred "so as to vest operating control . . . in persons other than those shown on the proposed stockholders' list now on file in . . ." the Commissioner's office without the Commissioner's prior approval.

Appellees contend, and we agree, that "Under the facts of this case, both logic and authority require the conclusion that appellees have been denied due process of law."

In examining the authorities, we begin with the decision of the Supreme Court in Gerst v. Nixon, 411 S.W.2d 350 (Tex.Sup. 1966), holding the new Savings and Loan Act (Art. 852a, Vernon's Ann.Civ.St.) valid and not in conflict with the Texas Constitution in restricting review by the courts to evidence contained in the administrative record made before the Commissioner and in providing that no evidence be admissible in court which was not adduced at the hearing on the matter before the Commissioner or officially noticed in the record of the hearing. The Supreme Court there "struck down the de novo provisions of the Act as violative of the separation of powers requirement of the Texas Constitution," and ". . . judicial modification of a hybrid form of review has resulted in Texas' closest approximation to federal type review." Southern Methodist University: Reavley, Substantial Evidence and Insubstantial Review in Texas, 23 Sw.L.J. 239, 254 (1969).

Authority relied on by appellants in which federal courts or courts of this state

have held that due process was not denied because no administrative hearing was required or because the administrative proceeding was subject to "de novo review" by the courts is not controlling of the facts in this case.

■ Under the Savings and Loan Act, as construed by the Supreme Court in Gerst v. Nixon, *supra,* we hold the rule to be that due process is denied if the Commissioner considers, without notice and opportunity to be heard, evidentiary matters not introduced or not made a part of the record of hearing as otherwise permitted. The Commissioner went to Texas City, as the uncontested testimony established, for the express purpose of confirming or denying what was in the record made at the hearing held four months earlier. The Commissioner gave the parties opposing the charter application no notice that they were being confronted by the evidence gathered in Texas City before his order granting the charter had issued.

■ Appellees were denied not only the right to cross-examine, if such should be appropriate, and to offer evidence in rebuttal or explanation, but were excluded entirely from the Texas City investigation. The findings derived from the Texas City inquiry circumstantially brought the Commissioner to the point of making up his mind about matters concerning which he had been inconclusive for the past four months and precipitated the order granting the charter less than three days later. Thus the *ex parte* investigation in which the opponents were denied participation, or even notice of its being conducted, both before and after the event, became so vital in the Commissioner's decision as to constitute harm as a matter of law and denial of due process.

Appellants contend, "Though cases in some jurisdictions hold as a matter of policy or statutory construction that an investigation of this type conducted here is not permissible, no Texas case is among them. Nor are the Texas cases among the 'few exceptions' which so hold on due-process grounds."

The Texas cases examined by appellants following this statement are readily distinguishable from the case under consideration. Appellants concede that Phillips v. Brazosport Savings & Loan Association, 366 S.W.2d 929 (Tex.Sup.1963), "may be distinguished from the present one on at least two grounds: (1) the statute then in effect did not *require* a hearing of any type . . . and (2) the statute, rather than the regulations, authorized . . ." the Commissioner to make an investigation and rely on the results.

As pointed out by appellants, the present statute (Art. 852a) explicitly requires a hearing. (Sec. 2.07) But, appellants say, the statute does not prescribe "the method of hearing" and does not "require a trial-type hearing with the right of cross examination," nor does it "restrict the Commissioner to the hearing record in making his decision."

Section 2.07 requires the Commissioner to give public notice of an application and to "give any interested party an opportunity to appear, present evidence and be heard for or against such application." Under provisions of Section 11.11 prescribing "Hearing procedure," the statute requires:

"(2) Opportunity shall be afforded any interested party to *respond* and *present evidence* and *argument* on *all issues involved in any hearing* held under any provision of this Act."

"(3) Upon the written request of any interested party the Commissioner *shall keep a formal record of the proceedings of any hearing* held under any provision of this Act."

"(4) A *decision or order* adverse to a *party who has appeared and participated* in a hearing shall be in writing and shall include *findings of fact* and *conclusions of law,* separately stated, *on all issues material to the decision reached. * * *"

"(5) A *decision or order entered after hearing* shall be *final and appealable* fifteen (15) days after . . . [the order] is entered *unless a motion for rehearing* is filed . . . and if the motion for rehearing is overruled such decision or order shall be final and appealable . . . after . . . the order overruling such motion is entered." (Emphasis added)

Section 11.12 provides the manner in which any party with an interest in the subject matter of a ruling or decision of the Commissioner may secure judicial review. The Supreme Court in Gerst v. Nixon, *supra,* concluded that the statutory provisions and the rules promulgated under the statute "demonstrate that a hearing before the . . . Commissioner is a different proceeding from the informal hearing . . ." considered by the Court in Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035 (1942). In *Nixon* the Supreme Court stated, "The requirement that the Commissioner file a record of the proceedings had before him with the District Court clearly implies that such record is to be considered by the court." As a matter of practice a formal record of hearings before the Commissioner is made, and rules prescribed for the Commissioner direct that he secure the services of a competent reporter "who shall keep a formal record of the proceedings of any hearing . . ." (411 S.W. 2d 356, 357)

It is difficult to conceive of a clearer or more explicit statutory description of "a trial-type hearing" than the "hearing procedure" found in the precepts of Section 11.11. All of the essential steps and elements of a civil trial in court are stated, beginning with notice or service, and continuing with pleading, presenting evidence, and making arguments on the issues involved. The Commissioner's decision, or judgment, is required to be in writing, with findings of fact and conclusions of law. Appeal is provided, either with or without motion for rehearing.

Section 11.12 provides judicial review in a manner comparable to appeals from trial courts to appellate courts, and since the decision in Gerst v. Nixon such appeals are remarkably similar to appeals from the trial courts because the review is on the record made before the Commissioner and not in a proceeding *de novo.*

Accepting as true the assertion of appellants that "no Texas case is among" cases holding that an investigation of the type conducted by the Commissioner at Texas City "is not permissible," it appears that perhaps for the first time facts are here presented under which a Texas court may examine a record which is not subject to a full hearing *de novo* in court and in which the complaint that due process has been denied is grounded on more than a mere departure from rules of procedure.

Prior to enactment of Article 852a and the decision in Gerst v. Nixon, the rule stated in Cook Drilling Company v. Gulf Oil Corporation, *supra,* was followed in Savings and Loan cases. Whether the administrative body actually heard sufficient evidence was considered immaterial because there would be a full hearing of the facts in district court, and the "rights of the parties will be fully protected" if the parties should have the opportunity in court to show that at the time the order was entered sufficient facts did not exist to justify the order. (161 S.W.2d 1036)

Under the present statute and the rule of Gerst v. Nixon, there is no way a party can maintain its right or make its defenses except in the hearing before the Commissioner. If in that hearing a party is denied notice that it is being confronted by evidence gathered *ex parte* by the Commissioner and is not afforded opportunity to "respond and present evidence and argument" or in some manner to offer evidence in explanation or rebuttal, the party is denied due process.

The appeal is heard and determined upon the record made before the Commissioner.

If the Commissioner conducts a separate investigation, in the presence and hearing of one interested party to the exclusion of all opposing parties, for the prime purpose of confirming or denying what has been placed in the prior formal record of proceedings, and thereby arrives at a decision announced in a final order, it must be presumed that the separate and covert investigation resulted in findings which precipitated the decision.

■ "The basic elements of due process at the agency level are notice, hearing, and an impartial trier of facts." (Reavley, *supra*, 243–4) In this case, where it is clear that the Commissioner in reaching a decision considered evidence not introduced at the hearing and not incorporated in the record as provided by Finance Commission Rules, the opportunity to examine the evidence so omitted has been denied to both the opposing parties and the courts of review. Thus notice and hearing were denied, and the trier of the facts failed to maintain even an appearance of impartiality.

The record does not disclose direct, as opposed to circumstantial, evidence of wrongdoing on the part of the Commissioner while making his investigation in Texas City with an interested party as his host. If there was wrongdoing, only the Commissioner, his Deputy, or Tarpey are in position to disclose such conduct. The Commissioner was unable to remember more than vague generalities about the trip. The Deputy could not remember Tarpey's name but knew that he was a man interested in getting a charter for Lone Star Savings and that he was the man who met them at the airport, drove them around town, and took them back to the airport. Tarpey did not testify.

The Savings and Loan Commissioner, as an administrative officer having the duty to conduct hearings and make decisions affecting the rights of adversary parties, is positioned as the judge of a court. Each is charged with the solemn trust to act fairly and impartially in fulfilling invested duties in the governmental household of the public. Each must act with genuine evenhandedness, compelled by a firm and continuous desire to render to everyone that which is his due, and to shun any conduct tending to undermine faith and confidence in the man or the office in which he acts. Caesar's wife, Pompeia, was merely a bystander when Clodius committed an act of sacrilege in the house in which she was lodged, yet Caesar divorced her, not because he believed her guilty of misconduct, but, he said, "Because my wife should be above suspicion." (Plutarch: Lives, Loomis, 1951, vol. 1 (Cicero) 324; vol. 2 (Caesar) 84)

Our conclusions and holding that appellees were denied due process are in harmony with many decisions of the federal courts and courts of other jurisdictions. United States v. Abilene & Southern Railway, 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924); Ohio Bell Telephone Company v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); Interstate Commerce Commission v. Louisville & National Railway, 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431 (1912); National Labor Relations Board v. Phelps, 136 F.2d 562 (5th Cir. 1943); Elizabeth Federal Savings & Loan Association v. Howell, 24 N.J. 488, 132 A.2d 779 (1957); Pennsylvania Railroad Company v. New Jersey State Aviation Commission, 2 N.J. 64, 65 A.2d 61 (1949); Dembeck v. Bethlehem Shipbuilding Corporation, 166 Md. 21, 170 A. 158 (1934).

Appellees urge certain contentions which we do not reach.

The record shows that the Commissioner heard all of proponents' witnesses, but did not personally hear any of the testimony offered by the opponents, except that of one witness whose testimony was heard out of order. Reports or findings of fact were not made and filed by the hearing officers acting for the Commissioner. This lack of communication between the several hearing

officers and the trier of the facts appellees urge as error. Because we affirm the judgment below on other grounds, we make no decision on this point. We observe, however, that it is the rule in federal courts that "the presiding officer who sees and hears the witnesses testify must make an initial or recommended decision or a report on the demeanor of witnesses whenever demeanor may be a substantial factor." Davis, Administrative Law Treatise, sec. 11.20, p. 122. The Supreme Court in Storrie v. Shaw, 96 Tex. 618, 75 S.W. 20, 22 (1903), held that a judge who tried a "case should make the conclusions of fact," even though he has retired, in order "for him to complete that which reflects the operation of his own mind or relates to his own conduct in the particular case."

Appellees also insist that the proper relief for this Court to grant is to disqualify Lone Star Savings and its organizers permanently from obtaining a charter. Appellees rely on a federal doctrine to disqualify completely an applicant when the applicant knew, or should have known, of improper influences being exerted in its behalf. The record before us is not fully developed on the behavior of Tarpey in behalf of Lone Star Savings. In event of a second application involving the same association or the same organizers or promoters, opponents of the application will have opportunity to develop such facts as may be appropriate to invoke the doctrine of permanent disqualification.

Appellees contend that the Commissioner erroneously took official notice of the articles of incorporation and the bylaws of the proposed association which were not introduced in evidence at the hearing, and that the trial court erred in admitting these documents in evidence which were not a part of the record adduced at the hearing. We find it unnecessary to decide these issues. We recently considered this general problem in Citizens of Texas Savings and Loan Assn. et al. v. W. Sale Lewis, Savings and Loan Commissioner et al., Tex. Civ.App., 483 S.W.2d 359 (decided July 5, 1972).

Under their final points, appellants urge that the trial court erred in finding the order of the Commissioner void and in remanding the matter to the Commissioner with instructions to deny the application for charter. Appellants say that "a reviewing court has no authority to write an administrative order" and that the trial court violated this principle and the statute "by instructing the Commissioner . . . to deny the charter application." Appellants insist that "the proper disposition of the matter is to remand to the Commissioner for further proceedings not inconsistent with the judgment of the court but without further specific instructions."

■ We are unable to perceive any practical or technical difference between the action of the trial court and the phrasing appellants insist should be adopted. The courts, and not the administrative agencies, are empowered to decide whether substantial justice has been denied a party to the controversy. Having decided that appellees in this case were denied due process in the administrative proceeding conducted by the Commissioner, the court gives its judgment practical effect and enforcement when it instructs the Commissioner to perform an act for which under the law there is no alternative. The court has not usurped any discretionary or supervisory powers of the Commissioner, nor has it sought to perform any of the duties of the Commissioner. The trial court but plainly directed the Commissioner to comply with the judgment.

The judgment of the trial court is affirmed.

Affirmed.