**L. Alvis VANDYGRIFF, Savings and Loan Commissioner et al., Appellants,**

v.

**SABINE VALLEY SAVINGS AND LOAN ASSOCIATION et al., Appellees.**

**No. 13276.**

Court of Civil Appeals of Texas, Austin.

Feb. 25, 1981.

Rehearing Denied April 8, 1981.

Mark White, Atty. Gen., Yolanda Martin, Asst. Atty. Gen., Shannon H. Ratliff, Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, for appellants.

Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellees.

SHANNON, Justice.

Appellants, L. Alvis Vandygriff, Savings and Loan Commissioner of Texas, and W. R. Boyd and others, have appealed from the judgment of the district court of Travis County setting aside the order of the Commissioner granting a charter for Shelby County Savings and Loan Association to be located in Center, Texas. Appellees Sabine Valley Savings and Loan Association of Center and First Savings Association of San Augustine were protestants in the administrative proceeding and plaintiffs in district court. This Court will reverse the judgment of the district court.

After hearing, the Commissioner entered his order approving the charter application on February 9, 1979. In his order, the Commissioner concluded, among other things, that the charter applicants had satisfied fully the requirements of Tex.Rev. Civ.Stat.Ann. art. 852a, § 2.08 necessary to obtain a charter for a savings and loan association. By letter of the same date, the Commissioner wrote counsel for the applicants notifying him of the approval of the charter application and enclosing the usual documents sent those persons obtaining a charter. In addition, the Commissioner's letter spoke to the subject of insurance accounts from the Federal Savings and Loan Insurance Corporation. The letter is here set out:

"Mr. James W. Hackney
McGinnis, Lochridge and Kilgore
Attorneys at Law
5th Floor—Texas State Bank Bldg.
900 Congress Avenue
Austin, Texas 78701

    Re:  Shelby County Savings Association,
           Center Charter Application

Dear Mr. Hackney:

There are enclosed the following instruments in connection with the above-cited application:

1. Order approving said application (subject to the conditions outlined below);

2. Charter certificate;

3. Four certified copies of the Articles of Incorporation;

4. Four certified copies of the Bylaws; and

5. Certification regarding the filing and approval of the Articles of Incorporation.

These instruments are being delivered to you with the understanding and agreement that they are contingent on the following terms and conditions, and I shall expect full compliance with the requirements, which are as follows:

a) The securing of Insurance of Accounts through the Federal Savings and Loan Insurance Corporation prior to opening with the understanding that if insurance is denied, the charter will be surrendered with the request for cancellation. You are to make your application for Insurance of Accounts immediately upon receipt of charter and to pursue same diligently for a determination;

b) All stock issued and outstanding should not be sold or hypothecated except in case of emergency and upon written approval of the Commissioner until Insurance of Accounts has been effective for three years;

c) There shall be no greater than 10% stock ownership in any one individual or more than 20% stock ownership in any one family;

d) The submission of the name and qualifications of your proposed Managing Officer to me before the position is tendered, for my approval in all respects. Also, assurance that your Managing Officer will be made a member of your Board of Directors; and

e) After obtaining Insurance of Accounts and opening for business, no dividends will be paid on common stock for a period of three years.

I want to emphasize that there shall be no publicity regarding any opening date for this association until Insurance of Accounts has been received.

To insure an understanding of the agreement outlined herein, it is respectfully

requested that you have each of the directors sign a copy of this letter to be returned to this office within a period of thirty days, at which time it will become a part of the permanent file. The signature of each of the directors will indicate their acceptance, approval and pledge to be bound by the requirements outlined herein.

Sincerely yours,
L. Alvis Vandygriff
Commissioner"

A prior letter from the Commissioner dated January 30, 1979, and addressed to counsel for the applicants, contains similar language regarding insurance of accounts.

Upon review, the district court was of the opinion that the ". . . Commissioner considered and gave weight to the standard of insurance of accounts in reaching his decision to approve the charter application of Shelby County Savings Association and to authorize such association to commence business as a savings and loan association." The district court concluded that such consideration by the Commissioner was: ". . . (a) in violation of constitutional and statutory provisions; (b) in excess of the statutory authority of the Commissioner; (c) made upon unlawful procedure; (d) arbitrary and capricious; (e) characterized by abuse of discretion; (f) characterized by clearly unwarranted, exercise of discretion." Accordingly, the district court entered judgment setting aside the Commissioner's order.

The action of the Commissioner, outlined in his letters, purporting to "condition" the approval of the charter application upon the applicants' securing of insurance of accounts through the Federal Savings and Loan Insurance Corporation does not find support in the statutes or regulations. Although it is true that prior rules and regulations governing the approval of savings and loan charter applications required the Commissioner to consider the probability of the federal corporation granting insurance of accounts, the rules and regulations presently in effect and at all times material to this application make no reference to insurance of accounts.

Article 852a, § 2.08 sets out the requirements necessary to obtain a charter for a savings and loan association. It is undisputed that the Commissioner concluded in his order of February 9, 1979, that the applicants for the proposed association had satisfied all requirements of that statute and that the application for the proposed association therefore should be approved. That order makes no mention of insurance of accounts as a condition for approval. The order is complete in itself and unconditionally concludes that appellants have complied with all statutory prerequisites. *See Citizens State Bank v. State Banking Board*, 602 S.W.2d 895 (Mo.App.1980).

In defense of the judgment, appellees argue that the Commissioner's own letters demonstrate the substantial weight accorded by the Commissioner to the non-statutory standard of insurance of accounts in his decision to approve this charter application. Those letters, appellees maintain, are indicative that the Commissioner gave the matter of insurance of accounts great weight in his decision-making process. Appellees claim that the disposition of this appeal is controlled by *Starr County v. Starr Industrial Services, Inc.*, 584 S.W.2d 352 (Tex.Civ. App.1979, writ ref'd n. r. e.).

In *Starr County*, Starr Industrial Services, Inc., filed an application with the Texas Water Quality Board requesting approval by the agency of a solid waste permit for a landfill to be located in Starr County. Although the application met all of the requirements of the governing statute, it also generated heated opposition from residents of Starr County. In correspondence, the Board's executive director admitted that the application had met the statutory criteria, but pointed the way for the Board's future course of action by concluding that the application could be denied "on the basis of the express views of the people within the county." The controlling statute did not list local sentiment or opposition as a criteria for approval or denial of an application.

At the Board's meeting, a Board member moved that the permit be denied for the reason that:

"I likewise am reluctant to imply that we have veto power over the local government and I must conclude, all the arguments possibly to the contrary, that there is considerable local opposition on the part of the local governments, more than just one, and I'm inclined to agree with [the executive director of the agency]."

That motion carried and the application for permit was denied. In the Board's order denying the application, the Board concluded that the application fully complied with the governing statute, but found that "[t]he adamant local opposition to the application for a proposed industrial solid waste management site evidences that the granting of a permit would be contrary to the welfare of the people in the area."

On appeal, this Court held that since local opposition was not a statutory criteria to be used by the Board, it should play no part in the Board's decision-making process, but that it had done so.

In *Starr County*, the agency's consideration of a non-statutory standard and its decision to act upon that impermissible standard was plain to see. In the case at bar, appellees' only evidence to indicate that the Commissioner considered a non-statutory criteria consists of the two letters. These letters alone, without further proof that the Commissioner gave weight and consideration to the impermissible standard in making his decision, do not establish that the Commissioner acted arbitrarily and capriciously in approving the charter application. Although appellees' burden to show such consideration by the Commissioner may be difficult, it is not insurmountable. *See Starr County v. Starr Industrial Services, Inc., supra; Lewis v. Guaranty Federal Savings & Loan Association*, 483 S.W.2d 837 (Tex.Civ.App.1972, writ ref'd n. r. e.).

The judgment of the district court is reversed and judgment is here entered sustaining the Commissioner's order approving the charter application.

Reversed and Rendered.

POWERS, J., not sitting.