FIRST SAVINGS & LOAN ASSOCIATION OF BORGER, Appellant,

v.

L. Alvis VANDYGRIFF, Savings & Loan Commissioner of Texas et al., Appellees.

No. 13215.

Court of Civil Appeals of Texas, Austin.

Sept. 24, 1980.

Rehearing Denied Oct. 15, 1980.

Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellant.

Mark White, Atty. Gen., Yolanda Martin, Asst. Atty. Gen., Larry Temple, Austin, for appellees.

SHANNON, Justice.

The opinion of this Court handed down on August 6, 1980, is withdrawn, and the following opinion replaces it.

First Savings and Loan Association of Borger, Texas, has appealed from the judgment of the district court of Travis County sustaining the order of the Savings and Loan Commissioner of Texas granting a charter for Citizens Security Savings and Loan Association to be located in Borger. Appellant is First Savings and Loan Association, and appellees are the proposed association and L. Alvis Vandygriff, Savings and Loan Commissioner of Texas.

Appellant attacks the judgment by eight points of error. The crucial issue on appeal is stated in point of error two: the district court erred in failing to hold that the course of *ex parte* actions and conduct pursued by the organizers of the proposed association invalidated the Commissioner's order.

The Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a § 17 (1970), provides:

"Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. An agency member may communicate ex parte with other members of the agency, and pursuant to the authority provided in Subsection (q) of Section 14, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may communicate ex parte with employees of the agency who have not participated in any hearing in the case for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence."

The organizers of the proposed association filed a charter application in 1978. The Commissioner heard the application in June and entered an order denying the application in August, 1978. The Commissioner overruled the applicant's motion for rehearing on August 17, 1978.

During the first week in September, 1978, and during the absence of counsel, five of the disappointed organizers came to Austin and visited with the Commissioner, giving him a "different view" of economic conditions of the Borger area than that reflected in the order denying the application. Those persons told the Commissioner that the economy of Borger was better at that time than it had been in thirty years. They suggested that two new shopping centers were going to be located in Borger and that such location would create a "real spurt in the economy." The organizers further told the agency head about the expansion of the Phillips Petroleum Company in the Borger area. No one representing appellant was advised of or was present at this parley with the Commissioner.

After their conference with the Commissioner, and in October, 1978, the organizers elected to refile the application with the Commissioner. In this connection, the charter applicants left the capital funds from the first application on deposit and used the stock subscription forms from the prior application. On cross–examination, Harold Orman, one of the organizing directors of the proposed association agreed that he viewed the entire proceeding "as just one ongoing application." In March, 1979, the Commissioner entered his order approving the charter application.

The Commissioner's order recited the fact that the organizers had met with him in September, 1978:

"[The] record forthrightly reflects that some of the charter applicants met with the Commissioner in September, 1978. That was a time when a previous application (which was turned down) had be-

come final and prior to the filing of the present application. These applicants had nothing pending before the Commissioner at that time. The Commissioner would note the existence of that meeting only in order to say that his decision in this case was based only upon the record as complied by all of the parties at the January 31 and February 1, 1979, hearing."

Appellees state that at the time of the discussion between the organizers and the Commissioner, the organizers had no application pending before the Commissioner. Accordingly, appellees argue that the *ex parte* communication could not and did not relate to a *contested* case or any matter pending before the Commissioner and, as such, was not prohibited by § 17.

■ An administrative order must be grounded upon evidence taken at the hearing and upon facts officially noticed by the hearings officer in the record of such hearing. *Gerst v. Nixon*, 411 S.W.2d 350 (Tex. 1966); Tex.Rev.Civ.St.Ann. art. 852a § 11.-12(5)(b) (1964). Recognition of this fundamental rule necessarily means that *ex parte* communications may not be a basis for such order.

■ Section 17 codified the preexisting rule in Texas that condemned *ex parte* communications by parties with officials charged with the duty of deciding contested issues. *Lewis v. Guaranty Federal Savings and Loan Association*, 483 S.W.2d 837 (Tex. Civ.App.1972, writ ref'd n. r. e.). The statutory prohibition against *ex parte* communications is, of course, consistent with the rules governing administrative hearings in this State, and, in addition, is recognition that such communications discredit the administrative process and undermine public confidence in government.

It is true, as urged by appellees, that at the time of the meeting the organizers had *no formal contested case pending* before the Commission. Nevertheless, it is also true that shortly after the parley with the Commissioner, the same organizers once again filed with the Commissioner their application for a charter for an association with the same name for the same location, Borger, Texas. The organizers placed in no new capital funds because the capital funds from the first application were still placed on account to the credit of the proposed association. The applicants also used the stock subscription forms from the prior application in the second application. This Court agrees with the organizers that, indeed, the first and second proceedings before the Commissioner were, in effect, "just one ongoing application," and concludes that the applicants acted contrary to the command of § 17.

On motion for rehearing, appellees insist that the holding of this Court places an unreasonable and unnecessary restraint upon communication between agencies and the public. To the contrary, the holding does not hinder proper communications between agencies and the public. Pursuant to § 17, the holding does inhibit communications of the character presented by the facts of this appeal.

■ It is not the burden of the complaining party to demonstrate harm by showing the extent, if any, to which the official was persuaded by the secret information. Instead, it is presumed that the separate meeting resulted in findings that precipitated the administrative order, *Lewis v. Guaranty Federal Savings and Loan Association, supra*, even though the administrative order may recite the opposite. One reason that the complaining party should not have the burden to show harm, is that it could be discharged only with great difficulty in view of the rule that the party may not probe the thought processes of the administrative officer. *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1940); *City of Frisco v. Texas Water Rights Commission*, 579 S.W.2d 66 (Tex.Civ. Ap.1979, writ ref'd n. r. e.).

■ Appellees contend, finally, that any impropriety resulting from the *ex parte* communication was cured by the disclosure at the administrative hearing. Contrary to that argument, disclosure of the *ex parte* consultation does not somehow purge the

parties' misconduct. Moreover, the opposing party is placed at a disadvantage in that an opportunity to controvert *ex parte* evidence afforded weeks or months after its communication to the decision maker is far less effective than timely cross–examination following the admission of evidence.

The judgment of the district court is reversed, and the judgment that the district court should have entered is here rendered that the order of the Commissioner be set aside and held for naught.

Reversed and Rendered on Motion for Rehearing.

PHILLIPS, C. J., not sitting.