The COUNTY OF GALVESTON, Texas,
et al., Appellants,

v.

TEXAS DEPARTMENT OF HEALTH
and Dr. Robert Bernstein,
Commissioner, Appellees.

No. 3–86–002CV.

Court of Appeals of Texas,
Austin.

Jan. 21, 1987.

Rehearing Denied Feb. 25, 1987.

L.A. Greene, Jr., Houston, for appellants.

Scott Lehecka, Asst. Atty. Gen., Tony Bradley & C. Dean Davis, Austin, for appellees.

Before POWERS, GAMMAGE and ABOUSSIE, JJ.

POWERS, Justice.

In July 1985, after notice and hearing, the State Department of Health issued to E & D Waste Systems, Inc. a permit authorizing the company to construct and operate a municipal solid-waste facility in Galveston County. The company's application for the permit was opposed in the agency proceedings by the County and numerous individuals who are appellants here.[1] Appellants sued in district court for judicial review of the agency order directing that the permit be issued. The district court affirmed the order and appellants have appealed to this Court assigning various errors in the district-court judgment. We will affirm the judgment.

## THE CONTROVERSY

The State Department of Health must approve before construction the plans and specifications of any sewage-disposal system intended for public use, unless they are required by law to be approved by the Texas Water Commission. Tex.Rev.Civ. Stat.Ann. art. 4477–1, § 12(a) (Supp.1986). The Department is directed to approve any plans and specifications submitted to it, "provided said plans conform to the water safety and stream pollution laws of this state." *Id.* One such pollution statute is the Solid Waste Disposal Act, Tex.Rev.Civ. Stat.Ann. art. 4477–7 (1976 & Supp.1986). The stated purpose of the Solid Waste Disposal Act is "to safeguard the health, welfare, and physical property of the people, and to protect the environment, through controlling the management of solid wastes...." (§ 1). Among other things, art. 4477–7:

(1) designates the Department to be the "coordinating agency for all municipal solid waste activities other than activities relating to hazardous municipal waste" (§ 3);

---

1. The appellants are: the County of Galveston, Texas, Bradshaw Nurseries, Inc., the L.E. Moore Estate, Raymond S. Allen, "Citizens Against Waste Site Pollution," B.J. Childs, Jerry McCullough, Clint Wolston, an individual whose surname is "Morrell," Bonnie Clark, J.L. Patterson, J.R. Thompson, W.E. Jones, Ken Calvert, Joy Beyer, Beatrice Lewis, E.B. Burdette, James Barnhart, Loretta Patton, and Cleo C. Williams. Some of the appellants own land near the site of the proposed solid waste treatment facility.

E & D Waste Systems, Inc. intervened in the district-court lawsuit brought by appellants seeking judicial review of the final order issued by the Texas Department of Health. Dr. Robert Bernstein, the Commissioner of Health, was joined by appellants as a party defendant in appellants' suit against the Department. The two defendants in that suit, and the intervenor, are appellees in this appeal.

(2) directs the Department to promulgate rules that "establish minimum standards of operation for all aspects of the management and control of the solid waste over which it has jurisdiction" (§ 4(c));

(3) specifies the subject matter of rules that the Department must promulgate (§ 4(c)(1)–(13));

(4) empowers the Department to "require and issue permits authorizing and governing the construction, operation, and maintenance of solid waste facilities used for the storage, processing, or disposal of solid waste" (§ 4(e)); and

(5) assigns to the Department great powers of investigation regarding solid waste disposal systems (§§ 4(d), 7).

Pursuant to the authority given the Department, it has promulgated comprehensive regulations governing "Solid Waste Management." 25 Tex.Admin.Code, ch. 325 (1986). Subchapter E of the regulations pertains to the granting of permits by the Department to authorize the construction of municipal solid-waste facilities of the type in issue in the present case—a sanitary landfill where solid waste will be baled, buried in trenches, and covered with at least six inches of compacted earth not less than once each day of operation.

E & D Waste Systems, Inc. applied to the Department for issuance of a permit in accordance with proposed plans and specifications that accompanied the application. On several occasions, employees of E & D Systems, Inc. conferred with Department employees regarding the sufficiency of the plans and specifications. Thereafter, the application was assigned to a hearing officer, another employee of the Department, for the public hearing contemplated by art.

4477–7, § 4(e)(4) and § 325.93 of the Department regulations. Appellants appeared in the proceedings and opposed the application. After hearing, the Department issued the permit on July 17, 1985, from which action appellants sought judicial review in a district court of Travis County, as they were privileged to do under the terms of art. 4477–7, § 9.

In the district-court proceedings, appellants were permitted to take the oral depositions of various officials of the Department in connection with appellants' contention that the additional evidence was material and that there were good reasons for their failing to present it in the agency proceeding. Texas Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(d)(1) (Supp.1986). In general, the deposition evidence relates to appellants' contention that Department officials and employees violated certain provisions of APTRA in the course of the administrative proceedings that led to the final order of the agency. After hearing, the district court affirmed the final order authorizing the permit and this appeal ensued. Following the scheme in appellants' brief, we shall group their points of error for purposes of discussion.

### EX PARTE COMMUNICATIONS

Six of appellants' points of error rest ultimately upon a common factor—the Department's final order represents the decision of an *organization* in a proceeding wherein several different Department officers and employees performed various functions that affected the final decision to issue the permit requested by E & D Waste Systems, Inc.[2] Appellants contend that

---

**2.** "The Problem of the Institutional Decision" is described as follows in Davis, *Administrative Law Text*, § 11.01 at 226, 227 (1972):

An institutional decision of an administrative agency is a decision made by an organization and not by an individual or solely by agency heads.... In the administrative process, evidence may be taken before an examiner or other subordinates may sift the evidence, various kinds of specialists of the agency's staff may contribute to the writing of the initial or recommended decision, and the

agency heads may in fact lean so heavily on the work of the staff as to know little or nothing about the problems involved in many of the cases decided in the agency's name. In the institutional decision lie elements of special strength and elements of special weakness of the administrative process. The strength springs from the superiority of group work—from internal checks and balances, from cooperation among specialists in various disciplines, from assignment of relatively menial tasks to low-paid personnel so as to uti-

this division of functions and the manner in which they were performed denied them due process of law and violated the prohibition against ex parte communications found in APTRA § 17. We shall describe in more detail how the final decision was reached in the administrative proceeding.

The application filed by E & D Waste Systems, Inc. was submitted to the Bureau of Solid Waste Management, a component of the Department having the assigned duty of ensuring that all required information accompanied the application. 25 Tex. Admin.Code § 325.91. The required information is quite detailed, complex, lengthy, and in many instances deals with technical matters beyond the comprehension of one not trained in science or engineering. In several instances the required information must derive from various scientific tests which must be performed on the site of the proposed waste-disposal facility. *Id.* § 325.71–.75. Copies or summaries of "all required information" must be submitted by the Bureau to numerous federal, State, and local authorities for their comments and recommendations, after which the Bureau is required to "perform a detailed technical evaluation and prepare a written summary of the application taking into consideration all comments received from the [State] review agencies" and any governmental body "within whose jurisdiction the proposed site is to be located." *Id.* § 325.-92. In cases where the application is unopposed, the Bureau chief is required to submit to the Department's general counsel "a

brief containing the Bureau's technical evaluation of the permit application, analysis, conclusions, and recommendations accompanied by the proposed permit." *Id.* § 325.93(2). In all cases, however, the Bureau chief becomes a party to each contested-case proceeding and must "submit a recommendation for approval or denial of applications for permits ...," having the assistance of "a professional engineer as project engineer, and such other staff members as may be necessary, to assist him in performing all processing and evaluation actions for each application." *Id.* § 325.91.

It appears uncontroverted that the Bureau chief appointed a project engineer and others to assist him in preparing his recommendation for approval or denial of the application filed by E & D Waste Systems, Inc. Before the hearing on the application, indeed before public notice was given of the application, representatives of E & D Waste Systems, Inc. met with the Bureau chief, the project engineer, and other Bureau employees, talked to them on the telephone, and corresponded with them concerning the application and the required information. In these transactions, the Bureau employees informed the applicant of numerous changes that were required in the Bureau's view in order to meet the Department regulations. In other particulars, the Bureau "approved"[3] certain aspects of the proposed facility. All of this was done before the public hearing required by art. 4477–7, § 4(e)(4) and Depart-

---

lize most economically the energies of high-paid personnel, and from capacity of the system to handle huge volumes of business and at the same time maintain a reasonable degree of uniformity of policy determinations. The weaknesses of the institutional decision lie in its anonymity, in its reliance on extra-record advice, in frustration of parties' desire to reach the men who influence the decision behind the scenes, and in the separation of the deciding function from the writing of the opinion or report.

   *    *    *    *    *    *

The problem is one of the large ones of Administrative Law.

3. It is not suggested that the Bureau's "approval" was in any way binding upon the agency, or anyone else, in the adjudicative hearing that

followed the Bureau's evaluation of the application. We conclude that such "approval" represented only the Bureau's views in urging, as it did, that the application be approved by the Department. The Bureau was, as mentioned later in the text, a *party* to the administrative proceeding and not in any sense a participant in the decision-making aspect. Much of appellees' brief on appeal sets out the efforts of the Department to isolate Bureau employees from those other Department employees and officials charged to make decisions in contested cases in which the Bureau is a party. We need not here describe such efforts. Appellants have not challenged appellees' assertion that the Department's general counsel did not participate in any way in the adjudicative proceedings apart from advising the Commissioner.

ment regulation § 325.93. In the end, the Bureau chief recommended approval of the application.

The case was set for public hearing at which appellants, along with the Bureau and E & D Waste Systems, Inc., appeared and participated as parties. The hearing was conducted by a hearing examiner employed by the Department. He prepared a proposal ·for decision in accordance with APTRA § 15. The proposal was given to the Commissioner for his decision. Before making his decision, the Commissioner obtained "legal advice" from the Department's general counsel concerning the case. He also obtained technical advice and opinions from an associate commissioner, Mr. Cochran. Mr. Cochran had previously consulted other Department employees about technical and scientific matters connected with making a decision in the case. None of the officers and employees in question were employed in the Bureau of Solid Waste Management and none had participated in the case theretofore. After considering the information received from the general counsel and Mr. Cochran, the Commissioner independently assessed the proposal for decision (according to his undisputed deposition testimony) and approved the application. We express no opinion as to the propriety of subjecting the Commissioner to such a deposition. *See Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575 (D.C.Cir.1985).

Appellants erect upon the foregoing transactions certain propositions not heretofore considered by any Texas appellate court, so far as we are able to determine. First, they contend that the *pre-*hearing communications between the applicant and Bureau employees violated the prohibition against ex parte communications contained in APTRA § 17. Next, they contend the

*post-*hearing communications that occurred between the Commissioner, Mr. Cochran, the general counsel, and certain Department employees also violated that statutory prohibition. Finally, they contend that all such ex parte communications affected the Commissioner's decision, and thus were fundamentally unfair and·deprived them of due process of law. *See Lewis v. Guaranty Federal Savings & Loan Ass'n,* 483 S.W.2d 837 (Tex.Civ.App.1972, writ ref'd n.r.e.) (due process of law denied by decisionmaker's ex parte visit to site of proposed savings and loan institution, when visit was made for express purpose of confirming or discrediting evidence adduced in contested-case hearing on application for charter).

The Legislature has provided as follows: Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. An agency member may communicate ex parte with other members of the agency, and ... members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may communicate ex parte with employees of the agency who have not participated in any hearing in the case for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence.

APTRA § 17.[4] We have traced in footnote four the derivation of APTRA § 17. The

---

**4.** Section 17 of APTRA is derived from § 13 of the "Revised Model State Administrative Procedure Act" approved in 1961 by the National Conference of Commissioners on Uniform State Laws. Section 13 of the 1961 Model Act provides:

Unless required for the disposition of *ex parte* matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and con-

clusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. An agency member

(1) may communicate with other members of the agency, and

(2) may have the aid and advice of one or more personal assistants.

In their comment, the Commissioners stated: This section is intended to preclude litigious facts reaching the deciding minds without getting into the record. Also precluded is *ex parte* discussion of the law with the party or his representative. No objection is interposed to discussion of the law with other persons, *e.g.,* the attorney general, or an outside expert. 14 Uniform Laws Annotated at 426 (1980). In general, then, § 13 of the 1961 Model Act applies to members of an agency and to employees who are assigned the duty of rendering a decision or making findings of fact and conclusions of law. It forbids ex parte communications by them with *anyone* regarding "any issue of *fact,"* and "with any *party or his representative"* regarding "any issue of *law."* (emphasis added) Finally, § 13 carves from the general proscriptions any communications between members of a multi-member agency and communications between a member and his "personal assistants."

As originally enacted, APTRA § 17 departed from the Model Act to provide simply:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any party or his representative, except on notice and opportunity for all parties to participate. Administrative Procedure and Texas Register Act, ch. 61, § 17, 1975 Tex.Gen.Laws 136, 146, *repealed by* Act of August 29, 1977, ch. 780, § 1, 1977 Tex.Gen.Laws 1959, 1959–1960. In short, the original Texas version only forbade ex parte communications with "any *party* or his *representative"* regarding issues of fact or law. But because the statutory prohibition was limited only to parties and their representatives, it impliedly *permitted* ex parte communications with any other person regarding issues of fact. This obvious implication would, of course, negate the fundamental purpose inherent in the idea of prohibiting ex parte communications: "... to preclude litigious *facts* reaching the deciding minds without getting into the record," in the language of the Commissioner's comment to the 1961 Model Act. (emphasis added) *See generally,* Guinn, "Post Hearing Stage," *Workshop Guide for the New Administrative Procedure and Texas Register Act,* G–7 (State Bar of Texas 1974).

The next Legislature to convene amended in two respects the original text of APTRA § 17. First, in an apparent response to the defect pointed out by Professor Guinn, the Legislature made universal the list of possible *participants* in the ex parte communications condemned by § 17—the amended version forbade ex parte communications "with any agency" or "person," as well as any "party" or the "representative" of a party. The possible *topics* of ex parte communications were not changed—they continued to

be "any issue of fact or law." As a result, the statutory prohibition was rendered almost *absolute:* there could be no ex parte communications regarding any issue of fact or law, by an employee or member assigned to render a decision or make determinations of fact or law, except in instances where ex parte "disposition" was "authorized by law." The resulting impracticality was obvious in at least two aspects of agency decisionmaking and the Legislature concurrently *authorized* in express terms two specific kinds of ex parte communications: (1) communications between agency members regarding any matter; and (2) communications by decisionmakers with agency employees "for the purpose of utilizing" their "special skills or knowledge ... *in evaluating the evidence,"* (emphasis added) provided such employees had "not participated in any hearing in the case...." The Legislature—in its effort to prevent "litigious facts" from reaching the minds of agency decisionmakers from non-party sources, while still permitting the decisionmakers access to expert advice in evaluating such evidence—evidently did not appreciate that the net result of the amendments was to foreclose expert advice regarding the *other* possible topic of ex parte communication: issues of "law." This, apparently, was an unintended consequence of the amendments. In any case, however, § 17 of APTRA was brought in 1977 to its present form by the Legislature's addition of the provisions emphasized below:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any *agency, person,* party, or their representatives, except on notice and opportunity for all parties to participate. *An agency member may communicate ex parte with other members of the agency, and pursuant to the authority provided in Subsection (q) of Section 14, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may communicate ex parte with employees of the agency who have not participated in any hearing in the case for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence.* (emphasis added).

Since the 1977 amendment of APTRA § 17, that section and § 13 of the 1961 Model Act are very similar. They continue to differ in the following respects:

1. Under APTRA § 17, there may be no ex parte communications with *anyone* regarding any issue of fact *or* law, except for communications with agency employees who have not participated in any hearing in the case, provided it is for the purpose of utilizing the special skills or knowledge of such persons *in evaluating the evidence.* In contrast, § 13 of the 1961 Model

primary purpose of § 17 is to preclude "litigious facts" coming before the decisionmaker without becoming part of the record in the contested case. In that respect, APTRA § 17 is identical in purpose with § 13 of the 1961 Model Act from which it basically derives. However, in promulgating APTRA, the Legislature made an important departure from the language and scope of Model Act § 13.

Both § 13 of the Model Act and APTRA § 17 forbid ex parte communications concerning issues of "fact" and issues of "law." Concerning issues of fact, both statutes forbid ex parte communication with *anyone,* except that APTRA § 17 permits such communications "with employees of the agency who have not participated in any hearing in the case for the purpose of utilizing the special skills or knowledge ... in evaluating the evidence." In a somewhat similar way, § 13 of the Model Act permits aid and advice to be obtained from "one or more personal assistants."

Concerning issues of law, on the other hand, § 13 of the Model Act and APTRA § 17 are entirely different. The former statute forbids ex parte communications only when made with a "party or his representative" and the comment to § 13 expressly provides that "[n]o objection is interposed to discussion of the law with other persons, e.g., the attorney general, or an outside expert." In contrast, however, APTRA § 17 was amended in 1977 so that it

presently forbids ex parte communications "in connection with any issue of ... law with any agency, *person,* party, or their representatives...." (emphasis added). Literally then, APTRA § 17 unequivocally forbids any ex parte communication with *anyone,* regarding an issue of law, "[u]nless required for the disposition of ex parte matters authorized by law...." Appellants argue that the latter exception—for occasions when the law authorizes the disposition of ex parte matters—does not here apply and we are therefore left to apply the apparent legislative purpose of isolating the decisionmaker from *any* legal views and opinions except those given on notice and opportunity for all parties to participate.

In any case, the prohibitions contained in APTRA § 17 are directed at ex parte communications with only those individuals "assigned to render a decision or to make findings of fact and conclusions of law in a contested case." So long as agency employees and officers are *not* so assigned, nothing in APTRA § 17 forbids any communication with them. With the foregoing observations in mind, we turn to appellants' contentions.

■ First, it is undisputed that the *pre*-hearing communications of which appellants complain occurred between the applicant and employees of the Bureau of Solid Waste Management, a party to the contest-

---

Act forbids ex parte communications with *any* person, including parties, regarding an issue of *fact;* however, issues of *law* may be the subject of such communications with anyone except *parties* and their *representatives.*

2. APTRA § 17 duplicates the 1961 Model Act in permitting ex parte communications between agency "members"; however, APTRA § 17 contains nothing analogous to that part of the 1961 Model Act that permits an agency member to "have the aid and advice of one or more personal assistants."

The 1961 Model Act was superseded by the Model State Administrative Procedure Act adopted in 1981. Section 4–213 of the 1981 Model Act deals with ex parte communications. It is much amplified over the 1961 version and provides in part as follows:

(a) Except as provided in subsection (b) or unless required for the disposition of ex parte matters specifically authorized by statute, a presiding officer serving in an adjudicative

proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any party, with any person who has a direct or indirect interest in the outcome of the proceeding, or with any person who presided at a previous stage of the proceeding, without notice and opportunity for all parties to participate in the communication.

(b) A member of a multi-member panel of presiding officers may communicate with other members of the panel regarding a matter pending before the panel, and any presiding officer may receive aid from staff assistants if the assistants do not (i) receive ex parte communications of a type that the presiding officer would be prohibited from receiving or (ii) furnish, augment, diminish, or modify the evidence in the record.

\* \* \* \* \* \*

14 Uniform Laws Annotated, *supra* (Cum.Ann. Pocket Part 1986, at 126).

ed case. Stated another way, the record does not show that any of the *pre*-hearing communications were to or from a member or employee "assigned to render a decision or to make findings of fact and conclusions of law" in the case, either directly or indirectly. Accordingly, we hold that these particular communications did not violate APTRA § 17.

■ Second, we consider those *post*-hearing communications that involved issues of "fact." These communications were shown to have occurred between the Commissioner and Mr. Cochran, and between Mr. Cochran and certain Department employees who were not in the Bureau and who had not participated in the case. The evidence shows that Mr. Cochran obtained technical advice from the employees and used it to form his own opinions which he in turn gave to the Commissioner. Indirectly and directly, then, the decisionmaker—the Commissioner—obtained advice on issues of fact from Department employees outside the Bureau who had not participated in the case. The record, however, does not show that these communications fell outside the exception allowed by APTRA § 17 for ex parte communications made "for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence." Accordingly, we hold that these particular communications did not violate APTRA § 17.

■ We turn then to the more complex questions raised in the application of APTRA § 17 to ex parte communications involving issues of "law." The record shows that the Commissioner, when he needs "advice from a legal point of view," turns to the Department's general counsel who has no connection with the conduct of contested cases of the kind involved here. The Commissioner obtained such advice in the present case and his decision is presumably based thereon.

As mentioned above, APTRA § 17 forbids a decisionmaker's obtaining legal advice ex parte, concerning a contested case, unless such advice may be said to fall within the exception allowed for ex parte communications "required for the disposition of ex parte matters authorized by law...." This exception is stated in very broad terms indeed and we have found no judicial opinion or other authority that sheds light on the legislative intention that lies behind the phrase. It *has* been stated, without reference to any authority or reasoning, that after the passage of APTRA § 17 "agency members should and will *continue* to communicate with other members, their *counsel,* personal assistants, and staff personnel, *subject to the requirements of the Act.*" McCalla, *The Administrative Procedure and Texas Register Act,* 28 Baylor Law Rev. 445, 459 (1976) (emphasis added). However, this statement is not useful for present purposes because the very question to be decided is *whether* APTRA § 17 forbids agency members to communicate ex parte with their "counsel" in the circumstances we have in the present case. The statement does suggest, however, a pre-APTRA *practice* by agency decisionmakers of resorting to such independent legal advice. Lacking specific guidance from any source, we are permitted to consider more general and fundamental matters in deciding whether the challenged communications fall within the general prohibition against ex parte communication, contained in APTRA § 17, or whether they fall within the exception as being "required for the disposition of ex parte matters authorized by law...."

Section 17 of APTRA, like analogous provisions in 5 U.S.C.A. § 557(d) (West 1977) and the 1961 and 1981 Model Acts, represents a persistent theme in that part of the administrative process dealing with agency adjudications—the separation of the decisionmakers in an adversary proceeding from extraneous influences that "discredit the administrative process and undermine public confidence in government." *First Savings & Loan Ass'n v. Vandygriff,* 605 S.W.2d 740, 742 (Tex.Civ.App.1980), *rev'd,* 617 S.W.2d 669 (Tex.1981). These statutory directives issue from considerations of statutory symmetry and due process of law: the Legislature having directed that adjudicative decisions be made upon a

"hearing" and a "record" compiled therein by adversary parties, fundamental fairness as well as the necessary statutory implications forbid ex parte communications that might affect the agency decision. Schwartz, *Administrative Law* § 7.15, at 372–74 (2d. ed. 1984).[5] We observe that the Department *regulations* attempt to *foster* such separation by requiring that the Bureau become a party to the contested-case proceedings, and by the Department's organizational isolation of the Commissioner and general counsel from those who participate in such proceedings. It would be difficult indeed to diminish the importance of separating the agency decisionmaker from such extraneous influences. We observe, however, that contested-case proceedings are only one aspect of a greater whole.

The *substance* of administrative government and the ultimate *purpose* of any administrative agency and its proceedings is the *administration of a statute or statutes* in order to effectuate a purpose laid down by the Legislature. In many instances, the administration of such statutes creates difficult conflicts involving important public interests and private interests, and the Legislature has assigned to the agencies the task of reconciling private interests with the legitimate claims of government, often with a grant of special jurisdiction to a district court or courts for the purpose of judicial review. "Administrative law" has developed as that segment of the law which includes the legal powers, procedures, and methods by which the agency's work is carried out within the rule of law. Along with other statutes and sources of law, many of the agencies are required to apply the provisions of APTRA in "contested cases," an expression defined to mean

> a proceeding ... in which the *legal* rights, duties, or privileges of a party are to be determined by an agency after an opportunity for *adjudicative* hearing.

APTRA § 3(2) (emphasis supplied). In sum, *legal* problems, powers, procedures, and methods pervade and dominate the administrative process generally and contested-case proceedings particularly. They are, indeed, the very essence of the latter. May it nevertheless be concluded, as appellants do, that the decisionmaker in a contested case must be isolated from any legal advice from anyone, other than the parties

---

5. The chief protections against the scourge of ex parte communications, in agency proceedings, must always be the morality and good judgment of responsible administrators. Without these, APTRA § 17 is largely an empty declaration because judicial enforcement cannot reach the enormous number of agency proceedings or the innumerable communications to which the statute could apply. At least, however, APTRA § 17 should be judicially construed to permit the maximum effectiveness reasonably to be derived from its language.

It is easy to see that APTRA § 17 was designed to secure procedural due process of law in agency proceedings and assure the exclusiveness-of-the-record principle reflected in other provisions of APTRA, such as that found in § 13(h). Thus, in *Vandygriff v. First Sav. & Loan,* 617 S.W.2d 669 (Tex.1981), the Supreme Court of Texas was able to reject complaints on these two grounds when a party to the agency proceeding conferred with the decisionmaker immediately before the contested case was formally instituted; and, adverse parties were afforded an opportunity, after the case was filed, to present contrary evidence and conduct cross-examination relative to the subjects of the premature discussions, which were placed in the record. The antidotes have a somewhat artificial air about them which is inconsistent with the larger purposes behind APTRA § 17. These purposes were suggested in our own opinion in the case, reaching the opposite result, where we stated that ex parte "communications discredit the administrative process and undermine public confidence in government." 605 S.W.2d 740, 742 (Tex.Civ.App.1980), *rev'd,* 617 S.W.2d 669 (Tex. 1981).

Stated positively, the unquestionable and undoubted honesty of administrative proceedings confers benefits that far outweigh whatever is achieved by a niggardly reading of APTRA § 17 or any supposed difficulties in administering the prohibition against ex parte communications. Moreover, the language of APTRA § 17 does not compel the narrow interpretation that it can apply only after the date a contested-case proceeding is filed in the agency. The language is equally susceptible to an interpretation that it was intended by the legislature to apply *whenever* the subject of the ex parte communication was an issue of law or fact in a controversy not yet adjudicated by the agency, unless the communication is permitted by the statute itself. *This* meaning would secure the intended benefits to administrative government. The contrary interpretation defeats them because one party almost invariably has the power to control the filing date of a contested-case proceeding.

and their "representatives," owing to the apparent prohibition contained in APTRA § 17?

Consistently with its general practice, the Legislature has not required that the Commissioner be legally trained. This implies in the strongest possible terms, in our view, that the Legislature intended that he *should have* the *independent* advice of a legally trained person when necessary to the discharge of his responsibilities under the numerous statutes the Legislature has given him to administer and enforce.[6] If denied that advice in contested cases submitted to him for final decision, then their "adjudication" becomes a charade and hardly the kind of determination envisaged by the Legislature in any statute requiring contested-case adjudications. Such absurd consequences, so prejudicial to important public and private interests, may not be attributed to the Legislature's enactment of APTRA § 17. *See National Surety Corporation v. Ladd,* 131 Tex. 295, 115 S.W.2d 600, 603 (1938). We hold, therefore, that the Legislature intended that the Commissioner should have the independent legal advice of the Department's general counsel, when he has not participated in the case theretofore, because such advice falls within the exception of communications "required for the disposition of ex parte matters authorized by law," as set forth in APTRA § 17.

■ We hold, as well, that appellants were not deprived of fundamental fairness by reason of any of the communications of which they complain. The pre-hearing communications did not involve any decisionmaker assigned to the contested case; and, concerning the post-hearing communications, we must assume, there being no showing to the contrary, that the Commissioner made his decision based upon a personal consideration of the evidence adduced in the case and the law, after addressing his mind thereto. *Anniston Manufacturing Company v. Davis,* 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143 (1937); *Morgan v. United States,* 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1936); Schwartz, *supra.*[7]

6. The Commissioner's responsibilities are pervaded by aspects requiring the advice of a legally trained person. Outside the statutes involved in the present appeal, the Commissioner is charged to enforce and administer many other statutes, some of which involve contested cases in which he has the final power of decision. A cursory glance at Tex.Rev.Civ.Stat. (1976 & Supp.1986) reveals their range: the collection of fees for public-health services, and the termination or suspension of such services for nonpayment (art. 4414c); the Texas Oral Health Program (art. 4418g–2); the Dental Health Program (art. 4418g–3); the Health Planning and Development Act (art. 4418h); the Communicable Disease Prevention and Control Act (art. 4419b–1); the Disabled Children's Service Act (art. 4419c); the Special Senses and Communication Disorders Act (art. 4419g); certain "outreach" health programs for children (art. 4419h); the Local Public Health Reorganization Act (art. 4436b); the Hospital Survey and Construction Act (art. 4437d); the Texas Ambulatory Surgical Center Licensing Act (art. 4437f–2); the Texas Birthing Center Licensing Act (art. 4437f–3); the Texas Primary Health Care Service Act (art. 4438d); the Indigent Health Care and Treatment Act (art. 4438f); an act for the licensing of convalescent and nursing homes and related institutions (art. 4442c); the Nursing Home Administrators Licensure Act (art. 4442d); the Texas Venereal Disease Act (art. 4445d); the Youth Camp Safety and Health Act

(art. 4447*l*); and, the Emergency Medical Services Act (art. 4447*o*).

7. In the *Morgan* case, it was stated that "The one who decides must hear," from which it might be inferred that the *only* individual permitted to make the final decision in a contested case is he who personally heard the evidence and legal argument in the case. 298 U.S. at 481, 56 S.Ct. at 912. The inference would be incorrect, however, for in *Morgan,* the Court also stated:

This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner.

298 U.S. at 481, 56 S.Ct. at 912. The correct inference to be taken from *Morgan,* according to one text writer, is this:

The agency head alone has the responsibility for making the ultimate decision. This does not mean that the agency head must carry out his task unaided. The evidence at the hearing may be sifted and analyzed by competent subordinates. Somewhere along the line, however, the one in whose name the decision is rendered must personally address his mind to the evidence and argument and make the decision that he deems them to justify. *Morgan* ... requires a personal rather than a purely institutional decision. The agency as an institution may, and doubtless must, help in the decision process. But the final decision itself

## FINDINGS OF BASIC FACT

█ In two points of error, appellants contend that the final order issued by the Department violates the provisions of APTRA § 16(b). That statute provides:

A final decision must include findings of fact and conclusions of law, separately stated. *Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings....*

(emphasis added). Appellants' argument under these two points of error is not entirely clear.[8] They assert that the pertinent statutes are found in arts. 4477–1 and 4477–7, *supra.* They then make two contradictory assertions about these two statutes:

There are no findings on the *statutorily required* criteria in this case. They are simply missing.

\* \* \* \* \* \*

There is *no* language in the statutes that says that the agency shall make findings on specific things nor that it shall consider certain "criteria" in performing its function.

(emphasis added). Perhaps the explanation lies in this sentence from appellants' brief:

The standards the agency must use in performing its function can and *must* be *implied* from a reasonable interpretation of the statute.

(emphasis added). We conclude then that the criteria required of the Department in its consideration of applications under art. 4477–7 should be implied therefrom, as in appellants' view, and we will consider on that ground their contention that the final order in the present case omits to set forth sufficient findings of underlying fact as required by APTRA § 16(b). As a further

complaint in that connection, appellants contend they were denied due process of law because the absence of sufficient findings of basic fact prevents their knowing the basis of the Department's decision in the case, and, in consequence, renders meaningless their statutory right of judicial review because the reviewing court is similarly deprived of any knowledge about the basis for the Department decision.

█ It is unquestionably true that the failure by an administrative agency to supply findings of basic fact violates the requirement of APTRA § 16(b), if that statute be interpreted naturally; that is to say, if it be interpreted in light of the purposes intended to be served by the statutory requirement for findings of fact and conclusions of law as set out in APTRA § 16(b). Nevertheless, the Supreme Court of Texas has held, in *Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.,* 665 S.W.2d 446 (Tex.1984), that findings of underlying fact need *not* be included in the agency's final order *except* where an "ultimate fact finding embodies a mandatory fact finding set forth in the relevant enabling act" or when the ultimate fact finding represents a criterion "that the legislature has directed the agency to consider in performing its function." 665 S.W.2d at 451. In the present case, the relevant "enabling act" or constitutive statute, art. 4477–7, *supra,* does not itself require that the Department make any particular finding of ultimate fact before issuing a permit nor does it direct that the Department consider any particular criterion before issuing the permit. Thus, under the Supreme Court's holding in *Charter Medical,* the Department was *not* obliged to make *any* findings of basic fact *at all* by reason of APTRA § 16(b). We therefore overrule appellants' contentions relative to APTRA.

must be the personal product of agency head; his own judgment must determine that it should be rendered.

\* \* \* \* \* \*

... This does not mean that the agency head bears the burden of reading the entire record. Schwartz, *Administrative Law,* § 7.20, at 391–92. *See also* § 7.24, at 408–12.

**8.** Several of the missing findings of basic fact, for which appellants contend, obviously do not

relate to disputed adjudicative facts. We refer to such things as the names and addresses of the owners of the land, the person who will be in charge of the proposed facility, the legal description of the land involved, and so forth. There is no requirement that an agency exercise a truth-finding power as to such matters when they are *not disputed* by the parties.

§ 16(b). This holding by the Supreme Court is binding on this Court notwithstanding its defects. *See* Powers, *Judicial Review of the Findings of Fact Made by Texas Administrative Agencies in Contested Cases*, 16 Texas Tech.L.Rev. 475, 498–514 (1985). We respectfully urge the Supreme Court to reconsider its holding in the *Charter Medical* case.

■ What then of appellants' *constitution*-based argument that they were denied meaningful judicial review owing to the absence of findings of basic fact sufficient to demonstrate the basis of the Department's decision? This important issue was *not* considered by the Supreme Court's decision in *Charter Medical* and in our view remains open for decision. We need not reach it here, however, because the record reveals that the Department has *by regulation supplied* the criteria for decision (in 25 Tex.Admin.Code § 325.74), setting out in detail the applicable considerations for decisionmaking under titles such as "Engineering Considerations," "Groundwater Protection," "Surface Water Protection," "Protection of Endangered Species," "Control of Methane," "Soils Data," "Active Geologic Faults," and "Land Uses;" and in its final order the Department *made* findings of ultimate fact concerning such considerations and set out accompanying findings of basic fact that demonstrate its evaluation of the relevant factors and the reasonableness of its findings of *ultimate* fact. As suggested by appellants, the relevant factors have been inferred by the Department from the pertinent statutes, and we find they have a reasonable basis therein. Because appellants do not attack the findings of ultimate fact on the basis that they are not reasonably supported by the findings of basic fact, we need not analyze the agency order on that basis. For the same reason, we need not consider whether the Department's findings of basic fact are supported by substantial evidence—appellants make no complaint in that regard.

In summary, the Department *has* complied with the requirements of APTRA § 16(b) even though it was not required to do so under the Supreme Court's holding in *Charter Medical.* The order therefore satisfies the demands of that statute (as construed by the Supreme Court). Similarly, the Department's findings of basic fact protected appellants' right to fundamental fairness, assuming the existence of such constitutional right in the context of the present case. In consequence, we overrule appellants' points of error 5 and 11.

## APPELLANTS' REMAINING CONTENTIONS ON APPEAL

Appellants group for discussion, in three sections, their remaining points of error. In many cases, these are multifarious and in violation of Tex.R.App.P. 74 (West 1986). *See Hooks v. Texas Department of Water Resources*, 645 S.W.2d 874 (Tex.App.1983, writ ref'd n.r.e.). In some respects, appellants could not have been prejudiced by the errors of which they complain, if errors they be. We have considered appellants' complaints as best we can, however, and find them to be without merit. Any discussion of them would lengthen this opinion unreasonably. We therefore overrule without discussion appellants' remaining points of error.

Finding no error as assigned by appellants, we affirm the judgment of the district court.