COALITION ADVOCATING A SAFE ENVIRONMENT, Appellant,

v.

TEXAS WATER COMMISSION, et al., Appellees.

No. 3–89–097–CV.

Court of Appeals of Texas, Austin.

Nov. 14, 1990.

Rehearing Overruled Dec. 12, 1990.

James B. Blackburn, Jr., Houston, for appellant.

Jim Mattox, Atty. Gen., Nancy E. Olinger, Asst. Atty. Gen., Austin, for Texas Water Com'n.

Charles L. Berry, Vinson & Elkins, Houston, for Chemical Waste Management, Inc.

Before SHANNON, C.J., and GAMMAGE and JONES, JJ.

GAMMAGE, Justice.

The Coalition Advocating A Safe Environment (Coalition) appeals from a district-court judgment affirming an order of the Texas Water Commission (Commission) permitting the owners of an existing solid waste management facility to construct and operate an incinerator at their facility. Coalition alleges the facility owners improperly communicated with a decision-maker during the permit process in violation of the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 17 (Supp.1990) (APTRA). We agree. We will reverse the district court's judgment and remand the cause to the Commission for reconsideration.

Chemical Waste Management, Inc. (Chemical) owns and operates a solid waste management facility near Port Arthur. Chemical applied to the Commission for authorization to construct and operate its proposed incinerator. Chemical also submitted the required tentative compliance plan. By taking these actions, Chemical acted in conformity with the Solid Waste Disposal Act, 1969 Tex.Gen.Laws, ch. 405, at 1320 [Tex.Rev.Civ.Stat. art. 4477–7, since amended and repealed, currently codified as Tex. Health & Safety Code Ann. §§ 361.001–.345 (Pamph.1990).]

Chemical, Coalition and the Texas Air Control Board (TACB), among others, participated as advocates in a hearing before the Water Commission. Coalition, an alliance of several environmental groups, was the principal contestant at the hearing. After the hearing, the Commission authorized both the construction of the incinerator and issuance of the compliance plan Chemical had submitted.

Coalition raises various issues by its points of error. By points one and two, it contends that the Commission's order is vulnerable to attack because TACB's staff engineer engaged in ex parte conversations with Chemical's representatives during the course of the hearing. These conversations are the subject of Coalition's complaint that Chemical violated section 17 of APTRA. Coalition summarizes what transpired as follows:

During the course of the public adjudicatory hearing, the attorney for the appellant CASE [Coalition] became aware of the fact that the TACB staff engineer was meeting at night with representatives of the applicant Chemical Waste Management during the time period when the adjudicatory hearing was taking place. Although the TACB was a party to the hearing, much of the information of importance to the TACB decision-making process was not developed through on-the-record testimony and cross-examination. Instead, information was exchanged between the TACB and the applicant CWM [Chemical] outside of the public adjudicatory hearing process.

Specifically, a several hundred page volume titled "Supplemental Air Quality Information" was delivered to Mr. Ruben Velazquez, the TACB staff permit engineer, outside of the hearing process during the period of time when the public hearing was ongoing. This document was relied upon in subsequent testimony by Mr. Velazquez but was never entered into the record. Further, Mr. Velazquez testified that he received numerous other submissions in the form of memoranda from the applicant, CWM, after the hearing began. Consider the following testimony:

Q. (by Mr. Blackburn) How many submissions did you receive from the applicant after this hearing started?
A. (by Mr. Velazquez) I haven't counted.
Q. Do you have them all with you.
A. I think I do.
Q. Would you count them?
A. I will try. I counted somewhere between 12 and 15 submittals [sic].
. . . .

Q. And are these (memoranda) in subjects directly associated with the information that is being discussed in this hearing?

A. Yes, they would all be associated with this permit.

One of the memoranda submitted from CWM's consultants to Mr. Velazquez was indiscreetly titled "The Information We Discussed Yesterday." Mr. Velazquez testified that he relied upon this supplemental information in forming his opinion regarding the proposed hazardous waste incinerator's compliance with the rules and regulations of the TACB. This opinion was subsequently delivered into the record of the hearing by Mr. Velazquez, testifying on behalf of the Texas Air Control Board.

(Citations omitted). This characterization of the nature of the communications is unrefuted by Chemical or the Commission.

The relevant portion of section 17 provides:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency *assigned to render a decision or to make findings of fact and conclusions of law in a contested case* may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate.

(Emphasis added). Section 17 applies in the contested case setting to prohibit communication between the agency's decision-makers or fact-finders and others, unless all parties have been given notice and an opportunity to participate. *County of Galveston v. Texas Dep't of Health,* 724 S.W.2d 115, 121 (Tex.App.1987, writ ref'd n.r.e.). The novel question presented here is whether TACB did, in fact, have decision-making or fact-finding authority such that its employee engineer was prohibited from communicating with another party to the proceeding, Chemical.

Chemical and the Commission correctly point out that the prohibitions found in section 17 apply only to agency members or employees assigned to render decisions or make findings of fact and conclusions of law, and argue the TACB was not a decision-maker or fact-finder in this proceeding. They assert that, because TACB was only a party, communications between Chemical's representatives and TACB's engineer were communications between parties. Such communications are not prohibited by section 17. We disagree with regard to TACB's status.

The TACB occupies a unique position in the Texas agency arena, as can be seen from the statute that outlines the procedure for permit proceedings such as the present one. Although the Texas Water Commission has exclusive authority to grant hazardous waste facility permits, 1969 Tex.Gen.Laws, ch. 405, at 1320, as amended, 1987 Tex.Gen.Laws, ch. 279, § 3, at 1632 [Tex.Rev.Civ.Stat.Ann. art. 4477-7, § 4(e)(4)(A)(i), since repealed], subsection (ii) of the same statute provides for an enhanced status for the TACB:

It is the intent of the Legislature that to the extent possible in conformance with this subpart (A), *the lead agency shall defer to the policies, rules, and interpretations of the Texas Air Control Board* on the air quality impact of the proposed hazardous waste or solid waste management activities, *and that the Texas Air Control Board remain the principal authority of the state* in matters of air pollution control.

1987 Tex.Gen.Laws, ch. 279, § 4, at 1632 [Tex.Rev.Civ.Stat. art. 4477-7, § 4(e)(4)(A)(ii), since repealed] (Emphasis added). Consequently, we begin with the premise that the Water Commission will give great weight to the recommendations of TACB, deferring to that agency, if possible, when air quality issues are involved.

In addition to this required deference, subsection (ii) continues:

If no contested case hearing on the permit application is held by the lead agency, *the recommendations or proposed permit provisions submitted by the Texas Air Control Board shall be incorporated into any permit issued by the lead agency.* If a contested case hearing

is held, all evidence and testimony of the state regarding air quality aspects of the application shall be developed and presented by the Texas Air Control Board. All parties, including the lead agency, shall have the right to cross-examine any testifying witnesses of the Texas Air Control Board. At the conclusion of the presentation of testimony, *the hearings examiner shall afford the Texas Air Control Board at least thirty (30) days in which to submit a set of proposed findings of fact and conclusions of law* and, if applicable, proposed permit language, respecting the air quality aspects of the application which relate to the criteria established under (A)(i), *which shall be accepted by the hearings examiner and the final decision-making body of the lead agency unless such body finds that the recommendations of the Texas Air Control Board are not supported by a preponderance of the evidence.*

1969 Tex.Gen.Laws, ch. 405, at 1320, as amended, Tex.Gen.Laws, ch. 279, § 4, at 1632 [Tex.Rev.Civ.Stat. art. 4477–7, § 4(e)(4)(A)(ii), since repealed] (Emphasis added). Section 4(e)(4)(A)(ii) requires TACB, after a contested case hearing, to submit proposed findings of fact and conclusions of law to the Commission regarding the air quality aspects of the application. The Commission *must* adopt the TACB's findings, conclusions, and proposed permit language unless the Commission determines from an independent review of the evidence that the findings, conclusions, and/or permit language are unsupported by a preponderance of the evidence. In the absence of such a determination, TACB's findings *must be* adopted.

To date, Texas courts have addressed few other instances in which ex parte communications allegedly violated section 17. In *County of Galveston v. Texas Department of Health,* 724 S.W.2d 115 (Tex.App. 1987, writ ref'd n.r.e.), an intervenor in a permit proceeding contended the applicant violated section 17 by communicating with employees of the agency from which it would ultimately have to obtain the permit. Although *County of Galveston* is factually

distinguishable, it does assist us by delineating the proper policy concerns inherent in any assessment of whether an ex parte communication violates section 17. As this Court observed in that case,

> It is easy to see that APTRA § 17 was designed to secure procedural due process of law in agency proceedings and assure the exclusiveness-of-the-record principle reflected in other provisions of APTRA....

*County of Galveston,* 724 S.W.2d at 123, n. 5.

The *County of Galveston* applicant engaged in some communications with agency employees before the permit hearing. The agency employees to whom communications were made were those responsible for ensuring that the applicant included all necessary information with its application. These employees did not later participate in the case. The remaining communications were post-hearing and were between an agency representative acting as a party—the Texas Water Commissioner, the assigned decision maker—and two non-participant agency employees—the agency's legal counsel and an associate commissioner. This Court concluded that neither group of the complained of communications violated APTRA § 17 because 1) the pre-hearing communications by the permit applicant were not made to agency employees "assigned to render a decision or to make findings of fact and conclusions of law," and 2) the post-hearing communications between the commissioner and his employees fell within the § 17 exception allowing ex parte communications made "for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence." *Id.* at 121–22. In *County of Galveston* we *did not* address the issue of whether discussions between an applicant and an agency official who may be a fact-finder, made during the course of a hearing, constitutes an ex parte communication in violation of APTRA § 17.

In the present case, during the permit hearing, Chemical communicated directly with a TACB staff engineer. There is no question that this employee relied on the

information supplied in forming his opinion as to Chemical's compliance with TACB rules and regulations. This appears to be communication between parties, which is not prohibited by section 17, until one considers that the TACB ultimately proposes findings of fact and conclusions of law which are potentially binding on the Commission.

Our examination of the rules of the TACB and the Water Commission convinces us that TACB employees who advocate a particular outcome at a hearing may very well be the same employees who propose findings of fact and conclusions of law for the Commission's action. Under these circumstances, we cannot say TACB is a mere party in the same sense that the applicant and the intervenor are parties. In view of the distinct roles of an ordinary party and TACB, we conclude that any communication between a party and TACB employees is prohibited when TACB's proposed findings and conclusions may bind the Commission to make a particular decision.

Nor is the present situation analogous to a civil trial in which the "winning party" would be permitted to draft the court's order. Parties other than TACB have no opportunity to draft proposed findings, conclusions, or permit language, although they may file exceptions to the proposals. This distinction, coupled with the Commission's statutorily required deference to TACB policies and the fact that TACB may make ultimate decisions in these matters, leads us to conclude that TACB has decision-making authority in permit proceedings such as this one before the Water Commission. We sustain Coalition's second point of error.

Because of our holding with respect to appellant's point of error two, we need not address the remaining points of error. We reverse the judgment of the district court and remand the cause for proceedings not inconsistent with this opinion.

SHANNON, Chief Justice, dissenting.

Appellee, Chemical Waste Management, Inc. (Chemical) applied with the Commission for authorization to construct and operate a solid waste incinerator at its existing solid waste management facility near Port Arthur. Thereafter, Chemical filed an application with the agency for a compliance plan to address the closed landfill on Chemical's existing site. Both applications were filed pursuant to the Solid Waste Disposal Act, Tex.Rev.Civ.Stat.Ann. art. 4477–7 (1976 & Supp.1989) (The Act).

The Commission convened a hearing to consider both applications. Among others, Chemical, Coalition Advocating A Safe Environment (Coalition) and the Texas Air Control Board (Air Control Board), were designated as parties to the agency proceeding. Coalition was the principal contestant at the hearing.

After hearing, the Commission handed down an order granting both permits: Permit No. HW–50212–001 authorizes Chemical to construct the hazardous waste incinerator and related facilities and to receive, store, and process hazardous waste at those facilities. Permit No. CP–50212–001 relates to the compliance plan issued in conjunction with Permit No. HW–50212–001.

Coalition asserts that the Commission's order is erroneous because an engineer with the Air Control Board engaged in ex parte conversations with Chemical's representatives during the course of the hearing. Coalition charges that such conversations were prohibited by Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 17 (Supp.1990).

Section 17 provides:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their representatives, except on notice and opportunity for all parties to participate. An agency member may communicate ex parte with other members of the agency, and pursuant to the authority provided in Subsection (q) of Section 14, members or employees of an agency assigned to render a deci-

sion or to make findings of fact and conclusions of law in a contested case may communicate ex parte with employees of the agency who have not participated in any hearing in the case for the purpose of utilizing the special skills or knowledge of the agency and its staff in evaluating the evidence.

In a contested case, § 17 prohibits ex parte communications between agency decision makers and others except on notice with opportunity for all parties to participate. *County of Galveston v. Texas Department of Health,* 724 S.W.2d 115, 121 (Tex.App. 1987, writ ref'd n.r.e.). Coalition suggests that the Air Control Board was more than a party to the proceeding and was, in fact, a decision maker.

Appellees Commission and Chemical respond that the § 17 prohibitions apply only to officers or employees of the agency assigned to render decisions or make findings of fact and conclusions of law. *Id.* That being so, appellees claim that in this proceeding the Air Control Board was *not* a decision maker, but instead was only a party and that communications between parties, as here, are not prohibited by § 17.

The determination of the Air Control Board's status in a permitting proceeding for the construction and operation of a solid waste incinerator should begin with an examination of the Texas Solid Waste Disposal Act. As between the Air Control Board and the Texas Water Commission, the Act recognizes that the *Commission* is the exclusive authority to grant hazardous waste facility permits:

> The owner or operator of a hazardous waste or solid waste management facility shall not be required to obtain a permit for the storage, processing, treatment, disposal, or destruction of solid waste or hazardous waste from any agency of the state other than the department or the commission ...

Art. 4477–7, § 4(e)(4)(A)(i).

Former section 4(e)(4)(A)(ii) of the Act defines the Air Control Board's role in the permitting process for a hazardous waste facility. That section provides in part:

It is the intent of the Legislature that to the extent possible in conformance with this subpart (A), the lead agency shall defer to the policies, rules, and interpretations of the Texas Air Control Board on the air quality impact of the proposed hazardous waste or solid waste management activities, and that the Texas Air Control Board remain the principal authority of the state in matters of air pollution control. Except as otherwise provided in this paragraph, the Texas Air Control Board shall perform a technical review of the air quality aspects of an application for a solid waste or a hazardous waste management facility, which relate to the criteria established under (A)(i). With the exception of applications for facilities which incinerate or burn solid or hazardous waste, applications for hazardous waste management facilities in existence on September 1, 1987, and applications for expansion of hazardous waste land disposal facilities in existence on September 1, 1987, are not subject to Texas Air Control Board review under this section. It shall complete such review and shall forward all recommendations or proposed permit provisions to the lead agency within the time limits established in the rules of the lead agency for the completion of technical review of the application. The lead agency shall incorporate into its proposed action all recommendations or proposed permit provisions submitted by the Texas Air Control Board, unless such recommendation or proposed permit provisions are determined by the lead agency to be less stringent than applicable requirements of the United States Environmental Protection Agency for state program authorization under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq., as amended. If the Texas Air Control Board's proposed permit provisions conflict with provisions proposed by the lead agency technical staff, the staffs of the two agencies shall attempt to resolve such conflict prior to the end of the technical review of the

application. If no contested case hearing on the permit application is held by the lead agency, the recommendations or proposed permit provisions submitted by the Texas Air Control Board shall be incorporated into any permit issued by the lead agency. If a contested case hearing is held, all evidence and testimony of the state regarding air quality aspects of the application shall be developed and presented by the Texas Air Control Board. All parties, including the lead agency, shall have the right to cross-examine any testifying witnesses of the Texas Air Control Board. At the conclusion of the presentation of testimony, the hearings examiner shall afford the Texas Air Control Board at least thirty (30) days in which to submit a set of proposed findings of fact and conclusions of law and, if applicable, proposed permit language, respecting the air quality aspects of the application which relate to the criteria established under (A)(i), which shall be accepted by the hearings examiner and the final decision-making body of the lead agency unless such body finds that the recommendations of the Texas Air Control Board are not supported by a preponderance of the evidence. The Texas Air Control Board may seek judicial review of the air quality aspects of any final decision of the lead agency. Both the lead agency and the Texas Air Control Board shall have authority to enforce the terms of any permit issued by the lead agency which relate to air quality.

The Act recognizes the Air Control Board's expertise in air quality and, in recognition of such expertise, confers party status upon the Air Control Board in a contested case involving an application for an incinerator permit. The Act outlines the responsibilities of the Air Control Board as a party to the proceeding. Section 4(e)(4)(A)(ii) directs that in a contested case, the Air Control Board shall submit to the Commission a set of proposed findings of fact and conclusions of law regarding the air quality aspects of the application. The proposed set of findings submitted by the Board is binding if the findings are sup-

ported by a preponderance of the evidence. Thus the Act assigns the Air Control Board a role in hazardous waste permit proceedings but it does not purport to elevate the Board to the position of decision maker.

This Court faced a similar situation in *County of Galveston v. Texas Department of Health.* One of the contentions in that appeal was that the applicant for a permit to construct a sewage-disposal system engaged in ex parte communications with the Bureau of Solid Waste Management, a division of the Department of Health. By agency rule, the Bureau's duty was to insure that all required information accompanied the application for a permit. Also by rule, the Bureau Chief became a party in all contested cases and was required to submit a recommendation for approval or denial of applications for permits.

In *County of Galveston,* the applicant met with Bureau officials concerning the application. In these meetings, the Bureau pointed out changes for the applicant to make in the application. In other particulars, the Bureau "approved" certain aspects of the proposed sewage-disposal facility. In the end, the Bureau Chief recommended to the Department the approval of the application.

The Bureau's "approval" was not binding upon the agency in the adjudicative hearing that followed the Bureau's evaluation of the application. This Court concluded that the Bureau's approval of the application merely represented its views in urging the Department to grant the application. This Court observed further that the Bureau was a *party* to the administrative proceeding and was not in any sense a participant in the decision-making aspect of the proceeding. This Court concluded that the applicant's communication with the Bureau did not violate § 17.

In response to the majority, I would suggest that an administrative agency has only such powers as are expressly granted it together with those necessarily implied from the authority conferred or duties imposed. *Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158, 160 (1961). The majority can point to no statute that

**646**

confers upon the Air Control Board the power of decision in the case of hazardous waste permits issued by the Commission unless that meaning can be attributed to art. 4477–7, § 4(e)(4)(A)(ii). In my opinion, it is not reasonably possible to assign that meaning to the statute. If one infers from the statute that the Air Control Board is given a power of decision, then it is a power of decision unaccompanied by a power to conduct a hearing by which a decision can be made on the law and the facts of the case. Conversely, the statute then gives the Commission the power to conduct a hearing without a power to make a decision. Or, if it is thought that the statute gives both agencies the power of decision, then it omits to provide how that power will be shared or exercised jointly.

As a matter of fact, art. 4477–7, § 4(e)(4)(A)(ii) simply gives the Air Control Board an advisory role as a party with respect to air quality matters involved in the hazardous waste facility permits issued by the Commission. The role is advisory with respect to the "technical review" required of the Air Control Board in such cases, which must include that agency's recommendations to the Commission. The text of the statute makes it clear that these are no more than recommendations. In this advisory role, the Air Control Board operates precisely as did the Bureau in *County of Galveston.*

On the other hand, the Air Control Board is also a party in the contested case, as indicated by the penultimate sentence in the statute which authorizes the Air Control Board to seek judicial review of the Commission's final order. It is unreasonable to suppose that the legislature intended to give the Air Control Board the right to appeal from its *own* decision; accordingly, one may not conclude from art. 4477–7, § 4(e)(4)(A)(ii) that the legislature intended for the Air Control Board to be a "decision maker" in the sense normally associated with that term: an entity given the discretionary power to choose *finally* and *with authority* between legal alternatives according to the facts and the law. The statute does not give the Air Control Board this power, with respect to its proposed findings of fact and conclusions of law, or anything else, because the statute plainly gives the power of ultimate decision to the Commission while conferring upon the Air Control Board the contrary right to seek judicial review of the Commission's order if the Board believes the Commission is wrong on the facts or the law.

In my view, the majority has today sidestepped the force of our holding in *County of Galveston,* and, in doing so, has sacrificed a sound rule of law for what it considers, in this particular matter, a "just result." *See Duncan v. Magette,* 25 Tex. 245, 253 (1860).

I would conclude that the Air Control Board in the permitting process is not a decision maker as contemplated by § 17. Accordingly, I would hold that the conversations between the Air Control Board's engineer and Chemical's representative were not prohibited.